**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

**DALLAS DIVISION**

| | | |
|---|---|---|
| MICK HAIG PRODUCTIONS, E.K., | ) | |
| | ) | |
| HATTINGER STR. 88 | ) | |
| | ) | |
| D-44789 BOCHUM, GERMANY | ) | |
| | ) | |
| Plaintiff, | ) | CA. 3:10-cv-01900-N |
| | ) | |
| v. | ) | |
| | ) | |
| DOES 1-670 | ) | |
| | ) | |
| Defendant. | | |

**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY
PRIOR TO RULE 26(F) CONFERENCE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION .............................................................................................................1

ARGUMENT......................................................................................................................4

I.    Plaintiffs Have Not Established that the Court Has Personal Jurisdiction Over the Vast
      Majority of the Defendants....................................................................................4

      A.    Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has Personal
            Jurisdication Over the Defendants Based on the Domicile of the Defendants..............5

      B.    Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has Personal
            Jurisdiction Over the Defendants Based on Alleged Acts of Copyright Infringment
            Occurring in Texas. ........................................................................................6

      C.    Plaintiff Cannot Undertake Discovery to Find Jurisdictional Facts.............................10

II.   Plaintiff Has Improperly Joined Thousands of Individual Defendants Based on Entirely
      Disparate Alleged Acts........................................................................................10

III.  Plaintiff Has Not Satisfied the Requirements Imposed by the First Amendment On
      Litigants Seeking to Unmask Anonymous Speakers. ..........................................................14

      A.    The Right to Engage in Anonymous Speech is Protected by the First Amendment. ......14

      B.    Because Plaintiff's Proposed Discovery Cannot as Proposed Survive the Scrutiny
            Required by the First Amendment, Plaintiff's Motion Must Be Denied.....................18

            1.    Plaintiff Has Not Made the Requisite *Prima Facie* Case for Each Defendant.......18

            2.    Given Plaintiff's Meager Factual Showing and the Immense Harm to
                  Defendants that Would Occur if Plaintiff's Motion Was Granted, Defendants'
                  First Amendment Interests Strongly Outweigh Plaintiff's "Need" for Their
                  Identities.........................................................................................20

            3.    Plaintiff Must Ensure that Defendants Receive Notice of Its Pending Claim and
                  Its Efforts to Unmask Them...............................................................22

CONCLUSION....................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Acevedo v. Allsup's Convenience Stores*, 600 F.3d 516 (5th Cir. 2010) ..................................... 13

*Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414 (E.D. Tex. Sept. 22, 2009) ......... 12

*ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002) ................................. 7, 8

*Applewhite v. Reichhold Chems.*, 67 F.3d 571 (5th Cir.1995) ..................................................... 13

*Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208 (4th Cir. 2002) ............................................................................................................................ 10

*Best Western Int'l v Doe*, No. CV-06-1537-PHX-DGC, 2006 WL 2091695 (D. Ariz. Jul. 25 2006) ............................................................................................................................ 17

*BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004) .... 3, 13

*BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. July 31, 2006) ............................................................................................................. 12

*Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182 (1999) ....................................... 14, 15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................................. 6

*Cable Electronics, Inc. v. North America*, No. 3:08-CV-0433-M, 2009 WL 2382561 (N.D. Tex. 2009) ............................................................................................................................ 10

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390 (4th Cir. 2003) 10

*Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010) ..................................................................... 4

*Coleman v. Quaker Oats*, 232 F.3d 1271 (9th Cir.2000) ............................................................. 13

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ............................... 16, 17

*Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. App. 2001) ...................................... passim

*Doe I and Doe II v. Individuals whose true names are unknown*, 561 F. Supp. 2d 249 (D. Conn. 2008) ............................................................................................................................ 17

*Doe v. 2themart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) ............................................... 14

*Doe v. Cahill*, 884 A.2d 451 (Del. 2005) ................................................................................ 16, 17

*Elektra Ent. Group, Inc. v. Does 1-9*, No. 04 Civ. 2289, 2004 WL 2095581 (S.D.N.Y. Sept. 8, 2004) ........................................................................................................................... 3, 19

*Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985) . 4, 7

*Fielding v. Hubert Burda Media*, 415 F.3d 419 (5th Cir. 2005) ............................................. 8, 10

*Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987)...........................................................15

*Hardin v. McAvoy*, 216 F.2d 399 (5th Cir. 1954).........................................................................5

*Highfields Capital Mgmt, L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005)............................17

*In re Does 1-10*, 242 S.W.3d 805 (Tex. Ct. App. 2007) ...............................................................17

*In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244 (D.D.C.) ...............................................15

*Independent Newspapers v. Brodie*, 966 A.2d 432 (Md. 2009) ...................................................17

*Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782
    (M.D. Fla. Apr. 1, 2004) ..........................................................................................................12

*Interscope Records v. Does*, 558 F. Supp. 2d 1176 (D. Kan. 2008)............................................15

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)...................................................................6, 9

*Krinsky v. Doe 6*, 72 Cal. Rptr. 3d 231 (Cal. Ct. App. 2008)......................................................17

*LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27,
    2008) .......................................................................................................................................11

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) .........................................................14

*Milliken v. Meyer*, 311 U.S. 457 (1940).........................................................................................5

*Mobilisa, Inc. v. Doe*, 170 P.3d 712 (Ariz. Ct. App. 2007) ........................................................17

*Morris v. Northrop Grumman*, 37 F. Supp. 2d 556 (E.D.N.Y.1999) ..........................................13

*Mortgage Specialists v. Implode-Explode Heavy Industries*, 999 A.2d 184 (N.H. 2010)...........17

*Moseley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir.1974) ..............................................12

*Motown Records v. Does 1-252*, No. 1:04-CV-439-WBH (N.D. Ga. Aug. 16, 2004).................12

*Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151 (2d Cir. 1974)
    .................................................................................................................................................13

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ....................................................................15

*Reno v. ACLU*, 521 U.S. 844 (1997)............................................................................................14

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) ...............................................................................8

*Salehoo v. Doe*, No. C10-0671JLR, 2010 WL 2773801 (W.D. Wash. July 12, 2010) ...............17

*Shelley v. Kraemer*, 334 U.S. 1 (1948) ......................................................................................15

*Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977).................................................15

*Sinclair v. TubeSockTedD,* 596 F. Supp. 2d 128 (D.D.C. 2009)...........................................2, 17

*Solers, Inc. v. Doe*, 977 A.2d 941 (D.C. 2009) ........................................................................17

*Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) .....................12, 15

*Talley v. California*, 362 U.S. 60 (1960)................................................................................14

*Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal. Nov. 16, 2004) ........................................................................................................................12

*U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760 (Tex. 1977).......................................................6

*UMG Recordings, Inc. v. Does 1-4*, No. 06-0652, 2006 WL 1343597 (N.D. Cal. Mar. 6, 2006) 15

*UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004) 11, 13

*United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080 (1st Cir. 1992)...................................................................................................................4

*United States v. Henderson*, 209 Fed. Appx. 401 (5th Cir. 2006)................................................5

*USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d 901 (N.D. Cal. 2010).....................................17

*Virgin Records Am. v. Does 1-44,* No. 1:04-CV-0438-CC (N.D. Ga. March 3, 2004)...............12

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980)..............................................4

**Statutes**

17 U.S.C. § 412.........................................................................................................................19

**Rules**

Fed. R. Civ. P. 20......................................................................................................................11

Fed. R. Civ. P. 21......................................................................................................................14

## INTRODUCTION

This Court has appointed the undersigned to represent the 670 John Doe Defendants as attorneys *ad litem* for purposes of responding to Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference, filed September 30, 2010.  As discussed below, the motion should be denied.

Plaintiff's motion, and ultimately its underlying claim, should be evaluated in the context in which it was brought.  This case, along with a growing number of other mass copyright cases that are being filed across the country which have to date affected over 50,000 people[1] nationwide, raise serious problems of fairness, due process, and individual justice.  In these cases, different plaintiffs have sued John Doe defendants from all over the country, each alleging a single act of copyright infringement of a pornographic movie.

The cases do not, however, appear to be filed with the intention of litigating them.  Instead, it seems that the plaintiffs' lawyers hope to take advantage of the threat of an award of statutory damages and attorney's fees, the ignorance of those sued about their potential defenses, as well as the stigma that is associated with downloading pornographic movies to induce the anonymous defendants into settling the case for a payment of roughly $1,500 to $2,500 dollars.  This amount seems chosen to be less than a defendant would likely have to spend just to hire a lawyer to defend the case.  And strong defenses exist for many sued:  for example, it appears that Plaintiff would be hard-pressed to prove actual damages caused by any particular Defendant and, as described further below, there is a reasonable chance that Plaintiff will not have any basis for seeking statutory damages.  Thus, this ruling on whether Plaintiff will be able to obtain the

---

[1] As of November 1, 2010, by an informal count, over 50,000 people have been sued in similar (in some cases nearly identical) Complaints arising from the alleged infringement of a single pornographic movie each.  This includes 8,700 individuals sued in the Northern District of Texas alone in nine separate lawsuits.  In addition, mass copyright complaints based on non-pornographic movies have also been brought against over 13,500 people in the District of Columbia.  Attached as Exhibit 2 to this Opposition is a chart summarizing these mass copyright infringement cases.  A version of this chart is also available at http://w2.eff.org/files/copyright_troll_lawsuit.htm.

identities of the Defendants may be the last chance that the Court has to ensure that the Defendants are treated justly – and that they will not be induced to settle by the fear of embarrassment or humiliation, with Plaintiff's counsel taking advantage of unrepresented Does' misunderstanding of the complexities of copyright law.

Luckily, the federal courts have safeguards, both procedural and substantive, to protect the rights of individual defendants.  Most importantly for this case given the subject matter of the film at issue, those safeguards include a careful process for determining whether the anonymity of an online speaker must be abridged.   Those safeguards apply in all litigation regardless of the legal claims made and should be applied here as well.  Certainly, copyright infringement is a legitimate basis for suit, and if many people engage in copyright infringement, many people may be sued.  But the general safeguards developed by federal courts to ensure that all civil defendants get a fair chance to present their defenses always apply and, in a case such as this, have special importance.

Unfortunately, the Plaintiff in this mass copyright case has not followed several safeguards developed by the federal courts, violating the legal rights of the John Doe Defendants. The first of those safeguards is personal jurisdiction.  Plaintiff's own factual allegations show that almost all of the Doe Defendants are located outside this Court's jurisdiction and do not appear to have sufficient contacts with the Northern District of Texas to support being haled into court here.  The second safeguard is joinder.  Plaintiff has improperly joined 670 unrelated Defendants into this single action, jeopardizing their right to an individual evaluation of their actions and defenses.  Finally, Plaintiff has not meet the First Amendment protective legal test for the discovery the identity of persons who have communicated anonymously online and has failed even to articulate the correct test.  As explained (for example) last year in *Sinclair v. TubeSockTedD,* 596 F. Supp. 2d 128 (D.D.C. 2009)*,* individuals who communicate anonymously online may be identified only if a plaintiff meets a multi-factor test designed to balance the right to seek redress for legitimate claims against the fundamental right to communicate anonymously. As demonstrated below, Plaintiff has not meet that standard.

For any of these three reasons, the motion for early discovery should be denied and Plaintiff should be instructed to:

1) bring suit against the individual Defendants in courts which appear likely to be able to properly exercise personal jurisdiction over the individual Defendants;

2) re-file this action against each defendant individually; and

3) meet the heightened First Amendment discovery standard prior to making any attempt to unmask the anonymous Defendants.

In addition, this Court should require that any future subpoena in this case seeking the identity of anonymous Defendants be accompanied by a cover notice ordering the Internet service provider in question to:

1) notify, within seven days of service of the subpoena, any person whose information has been sought that such information may be disclosed and to briefly describe that person's rights and options for protecting such information; and

2) provide sufficient time and opportunity for the persons whose information has been sought to exercise those rights, such as by moving to quash.  (Plaintiff should further be required to compensate the ISP for additional costs, if any, associated with providing notice.)

To assist the Court, we attach hereto a draft notice modeled on the procedures issued by the District Court for the Eastern District of Pennsylvania for cases brought by recording companies several years ago and by the District Court for the District of Columbia for the cases currently pending there.  *See* Exhibit 1 to this Opposition.  *See also Elektra Ent. Group, Inc. v. Does 1-9*, No. 04 Civ. 2289, 2004 WL 2095581 (S.D.N.Y. Sept. 8, 2004) (Exhibit C to Defendants' Request for Judicial Notice ("RJN")) and *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004) (Exhibit D to RJN).  The notice has been further updated based on counsel's experience assisting individuals identified in these cases to better explain the situation and address common questions.  Such a notice would help ensure that Defendants have a fair opportunity to represent their interests.

## **ARGUMENT**

I.    **Plaintiffs Have Not Established that the Court Has Personal Jurisdiction Over the Vast Majority of the Defendants.**

As a threshold matter, Plaintiff has not met its burden to establish that this Court has personal jurisdiction over the vast majority of the Defendants.  Consequently, the Court may not authorize or enforce any discovery Plaintiff seeks about or directed at those Defendants.  *See, e.g., Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-471 (5th Cir. 1985) (no authority to issue preliminary relief without personal jurisdiction).  *Accord, United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1084 (1st Cir. 1992) (same).

The constitution imposes on every plaintiff the burden of establishing personal jurisdiction as a fundamental matter of fairness, recognizing that no defendant should be forced to have his rights and obligations determined in a jurisdiction with which he has had no contact.  These requirements "give[ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  Accordingly, the Plaintiff bears the burden of pleading specific facts sufficient to support the Court's exercise of personal jurisdiction over the Defendants.  Simply reciting personal jurisdiction requirements is not enough, nor are the assertions of naked legal conclusions; rather, Plaintiff must assert the factual basis underlying its claims.  *See*, *e.g.*, *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (holding that "plaintiff bears the burden of establishing personal jurisdiction … and that burden is met by making a *prima facie* showing.").

Plaintiff has offered two theories for the Court's exercise of personal jurisdiction over the Defendants:  first, that "Defendants are residents of this State, including this District," and second (in the alternative) that "Defendants' acts of copyright infringement occurred in this State, including this District and Defendants should anticipate being haled into court in this State."  Complaint ¶ 3.  Plaintiff has not made a *prima facie* showing for either allegation for the

4

vast majority of the Defendants.  Consequently, Plaintiff's motion for discovery into the identities of the Defendants should be denied.

### A.  Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has Personal Jurisdiction Over the Defendants Based on the Domicile of the Defendants.

Federal courts may exercise personal jurisdiction over individuals whose domicile[2] is within the jurisdiction.  *See*, *e.g.*, *United States v. Henderson*, 209 Fed. Appx. 401, 402 (5th Cir. 2006); *Milliken v. Meyer*, 311 U.S. 457, 463-64 (1940).  For at least 633 of the 670 Defendants, Plaintiff, however, has plainly not made a *prima facie* showing to support this purported basis for jurisdiction.  The only jurisdictional facts alleged by Plaintiff are "the IP address of each Defendant thus far identified, together with the date and time at which his or her infringing activity was observed" that it includes as Exhibit A to its Complaint.  Complaint at ¶ 6.  In fact, 631 of the 670 IP addresses that Plaintiff included in its Exhibit A not only do not provide any indication that the Defendants' may be residents of Texas, they suggest that the Defendants were outside of Texas when the allegedly infringing activity took place

As explained in the accompanying affidavit prepared by EFF Senior Staff Technologist Seth Schoen, many tools freely available to the public help reveal where a person using a particular IP address is likely to be physically located.  Declaration of Seth Schoen ("Schoen Decl.") at ¶¶ 4, 5, 7, 12, 15.  Two such techniques are reverse domain name service lookup or "reverse DNS" and access to the public database operated by the American Registry for Internet Numbers ("ARIN database").  *Id.* at ¶¶ 5, 12.  Mr. Schoen used these tools to determine where Defendants are likely to be located.  *Id.* at ¶¶ 9, 11, 14.  Mr. Schoen concluded that the IP addresses and related records indicated that the Does were likely to located all over the country, from Hawaii to Florida.  *Id.*  at ¶¶ 7, 11, 14, 24.

---

[2] As pled, Plaintiff alleges that the Court has personal jurisdiction over the Defendants based on "residen[cy]" as opposed to domicile.  Complaint ¶ 3.  Although residency is an insufficient basis for personal jurisdiction as individuals may have several residencies but only one domicile at a time (*see*, *e.g.*, *Hardin v. McAvoy*, 216 F.2d 399, 402 (5th Cir. 1954)), Defendants will treat Plaintiff's jurisdictional allegation as one based on domicile and not residency for purposes of this Opposition.

With no evidence supporting the claim that Defendants are "residents" of Texas, and with the only proffered allegations supporting the opposite conclusion – that the vast majority of the Defendants indeed are domiciled elsewhere – the Court cannot exercise personal jurisdiction over Defendants on that ground.

**B.    Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has Personal Jurisdiction Over the Defendants Based on Alleged Acts of Copyright Infringment Occurring in Texas.**

Plaintiff alternatively argues that the Court has personal jurisdiction over the Defendants because "Defendants' acts of copyright infringement occurred in this State." Complaint at ¶ 3. Plaintiff has not met its *prima facie* burden supporting this jurisdictional argument either.

In order for a court to exercise personal jurisdiction over a non-consenting, non-resident defendant, suit in the forum at issue must be consistent with the requirements of the Due Process Clause.[3]  Accordingly, a plaintiff must demonstrate that: (1) the non-resident "has 'minimum contacts' with the forum" and (2) "requir[ing] the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985).  Plaintiff has not met this burden.

As discussed above, the only juridictional facts identified by the Plaintiff (*i.e.*, the IP addresses it associates with each Defendant) give no indication that the copyright infringement occurred in this state.  Plaintiff provides no additional evidence.[4]  Without any *prima facie* evidence to support the claim that the alleged infringement took place within the state, Plaintiff has not established minimum contacts and therefore this Court cannot exercise personal

---

[3] A court's exercise of personal jurisdiction over non-consenting, non-resident defendants must additionally be authorized by statute.  The Texas Supreme Court has held that the Texas long-arm statute reaches as far as the Due Process Clause will permit.  *See, e.g.*, *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977).

[4] As described further below, Plaintiff itself appears to be located in Germany, and the only real contact with Texas appears to be the location of its counsel.  But even if Plaintiff were in Texas, that would not extablish where the act of infringement occurred.

jurisdication over the Doe Defendants.  *See, e.g., Enterprise Int'l*, 762 F.2d at 470-471 (no authority to issue preliminary relief without personal jurisdiction).

To the extent that Plaintiff is suggesting a more expansive theory of personal jurisdiction based on the cross-border accessibility of information on the Internet as a whole, that argument too must fail on the basis of insufficient contacts between Defendants and this jurisdiction.  As early as 2002 courts have rejected the claim that the mere fact that the Internet permits access to information by residents of every state as well as other countries means that the person engaged in that activity can be sued anywhere in the United States.  As the Fourth Circuit explained in *ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002):

> The argument could . . . be made that the Internet's electronic signals are surrogates for the person and that Internet users conceptually enter a State to the extent that they send their electronic signals into the State, establishing those minimum contacts sufficient to subject the sending person to personal jurisdiction in the State where the signals are received.  Under this argument, the electronic transmissions symbolize those activities ... within the state which courts will deem to be sufficient to satisfy the demands of due process.  But if that broad interpretation of minimum contacts were adopted, State jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would be eviscerated.
>
> In view of the traditional relationship among the States and their relationship to a national government with its nationwide judicial authority, it would be difficult to accept a structural arrangement in which each State has unlimited judicial power over every citizen in each other State who uses the Internet. . . .  That thought certainly would have been considered outrageous in the past when interconnections were made only by telephones. . . .  But now, even though the medium is still often a telephone wire, the breadth and frequency of electronic contacts through computers has resulted in billions of interstate connections and millions of interstate transactions entered into solely through the vehicle of the Internet.

*Id.* at 712-713 (citations omitted).

Accordingly, the Fourth Circuit limited the exercise of personal jurisdiction based on Internet usage to situations where the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.  Under this standard, a person who simply places information on the Internet does

not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." *Id.* at 714.

The Fifth Circuit embraced this approach in *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002). In *Revell*, a retired Associate Director of the FBI sued over alleged defamation in an article placed in the Columbia Journalism Review that was on the Review's web site. Although the article pertained to events that occurred when Revell was in the FBI's Washington, DC office, he filed suit in Texas where he had retired. Neither defendant (Lidov and Columbia University), however, was aware that Revell was living in Texas at the time of publication. The Fifth Circuit held that suit could not be brought in Texas even though Revell would suffer the brunt of his harm there and even though, had defendants known he was in Texas, they would have known that the brunt of the harm would be suffered there:

> Knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test. The defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum, as *Calder* itself and numerous cases from other circuits applying *Calder* confirm. Demanding knowledge of a particular forum to which conduct is directed, in defamation cases, is not altogether distinct from the requirement that the forum be the focal point of the tortious activity because satisfaction of the latter will ofttimes provide sufficient evidence of the former.

*Id.* at 475-476. *See also Fielding v. Hubert Burda Media*, 415 F.3d 419, 424 (5th Cir. 2005) (citing *Revell*).[5]

In the immediate case, even assuming that each of the Defendants knew that they were infringing a copyright of Mick Haig Productions, there is no evidence that Mick Haig has any connection to Texas,[6] or even more significant, that the Does were aware of such a connection.

---

[5] In counsel's experience, among the defendants often swept into mass copyright infringement suits such as this one are individuals who did not themselves download the song or movie in question, but simply made the mistake of maintaining an unsecured wireless network that allowed neighbors to obtain Internet access. Whether or not such individuals can be sued for copyright infringement, at the very least those individuals did not knowingly direct tortious activity at Texas.

[6] Plaintiff's attorney has candidly explained to the press that the reason the Plaintiff has chosen the courts in Texas to pursue this litigation is that that the law is particularly favorable here:

> The cases have all been filed in Dallas, Stone says, not just because he and his industry contact live around here, but because porn producers have an easier time

Consequently, Plaintiff has made no *prima facie* showing that any of the Defendants had any idea that Plaintiff Mick Haig Productions would suffer any harm in Texas.

Requiring individuals from across the country to litigate in this District creates exactly the sort of hardship and unfairness that the personal jurisdiction requirements exist to prevent. It requires the individuals urgently to secure counsel far from home, where they are unlikely to have contacts. In this particular instance the hardship is very clear. When the underlying claim is a single count of copyright infringement, the cost of securing counsel even to defend a Defendant's identity is likely more than the cost of settlement and possibly even more than the cost of judgment if the Defendant lost in the litigation entirely.

Undersigned counsel have been appointed as attorneys *ad litem* only to respond to the motion for early discovery. It is not at all clear that the Court's appointment would authorize counsel to file a motion to dismiss for lack of personal jurisdiction on behalf of our Doe clients. Moreover, counsel would be reluctant to file such a motion without the opportunity to consult with our clients, given the danger that filing a motion without joining other defenses might forfeit the right to raise other defenses by a Rule 12 motion. However, counsel believe that, when the absence of personal jurisdiction is this apparent, the Court could and should properly issue a *sua sponte* order requiring Plaintiff to show cause why the action should not be dismissed against those Defendants whose IP addresses do not suggest presence in the forum. And in any event, Plaintiff's motion for early discovery should be denied for lack of personal jurisdiction based on its failure to meet the Due Process requirements set forth in *International Shoe* and its progeny.

---

establishing copyright here. Showing proof that you've applied for a copyright is good enough for the Northern District of Texas, Stone says, while in other jurisdictions you'd need to hold the copyright already -- which is either time-consuming (there's an eight-month backlog, Stone says) or expensive ($800 to expedite the application).

Patrick Michels, *BitTorrent File Sharing Finally Has Porn Producers Crying Onkel in Dallas Federal Court*, DALLAS OBSERVER, September 22, 2010, available at http://blogs.dallasobserver.com/unfairpark/2010/09/bittorrent_file_sharing_finall.php.

### C.    Plaintiff Cannot Undertake Discovery to Find Jurisdictional Facts.

Plaintiff's failure to meet its jurisdictional burden is to be determined before discovery is issued, not after.  To the extent that Plaintiff argues that it should be granted leave to seek discovery in support of its jurisdictional allegations, this effort too must fail.

When seeking discovery on personal jurisdiction, a plaintiff is required to make a "preliminary showing of jurisdiction" before she is entitled to discovery.  *See, e.g.*, *Fielding*, 415 F.3d at 429  (stating that a plaintiff's discovery request should be granted if the "plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts"); *Cable Electronics, Inc. v. North America*, No. 3:08-CV-0433-M, 2009 WL 2382561, at *2 (N.D. Tex. 2009),  (citing *Fielding*).  However, it is well within the district court's discretion to deny discovery requests where the plaintiff "offers only speculation" of jurisdiction; "fishing expeditions" into jurisdictional facts are strongly disfavored. *See, e.g.*, *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 216 n. 3 (4th Cir. 2002) (holding that a court can deny a discovery request if "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction").  Where, as here, the Plaintiff's own factual allegations plainly serve only to demonstrate the absence of proper jurisdiction, the Court should decline to extend this case further.

### II.    Plaintiff Has Improperly Joined Thousands of Individual Defendants Based on Entirely Disparate Alleged Acts.

There is little doubt that Plaintiff's joinder of 670 Defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued.  Mass joinder of individuals has been disapproved by federal courts in copyright infringement cases based on computer downloads before.  As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works.  John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

10

*BMG Music v. Does 1-203*, 2004 WL 953888, at *1 (severing lawsuit involving 203 defendants).

Rule 20 requires that, for parties to be joined in the same lawsuit, the claims against them must arise from a single transaction or a series of closely related transactions.  Specifically:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20.  Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met:  (1) the right to relief must be "asserted against them jointly, severally or in the alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; and (3) there must be a common question of fact or law common to all the defendants.  *Id.*

Joinder based on separate but allegedly similar behavior by individuals using the Internet to commit copyright infringement has been rejected by courts across the country.  For example, the District Court for the Western District of Texas denied efforts by recording industry plaintiffs to join 254 defendants accused of infringing their copyrights by illegally downloading music, stating:

> The claim is against each defendant is individual, based on individual acts of each defendant, and if proven, will result in unique damage claims.  The defendants are not properly joined under Rule 20.

*UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004), (Exhibit A to RJN) (dismissing without prejudice all but the first of 254 defendants accused of unauthorized music file-sharing).  Similarly, in *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the same way.  The court explained:  "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder."  *LaFace Records*, 2008 WL

544992, at *2.  In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS

53237, at *5-6 (N.D. Cal. July 31, 2006), the district court *sua sponte* severed multiple

defendants in action where the only connection between them was allegation they used same ISP

to conduct copyright infringement.  *See also, e.g., Interscope Records v. Does 1-25*, No. 6:04-cv-

197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate

recommended *sua sponte* severance of multiple defendants in action where only connection

between them was allegation they used same ISP and P2P network to conduct copyright

infringement); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous

Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth

Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal. Nov. 16, 2004) (in

copyright infringement action against twelve defendants, permitting discovery to identify first

Doe defendant but staying case against remaining Does until plaintiff could demonstrate proper

joinder) (Exhibit B to RJN).[7]

Although the Fifth Circuit has not endorsed a specific test with regard to whether claims

are within the "same transaction or occurrence," district courts within the Circuit have embraced

the same joinder principles.  As noted above, the District Court for the Western District of Texas

found misjoinder in similar copyright infringement cases brought in 2004.  Similarly, in *Adrain

v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414 (E.D. Tex. Sept. 22, 2009), the District

Court for the Eastern District of Texas applied a related test from *Moseley v. General Motors

Corp.*, 497 F.2d 1330, 1332-33 (8th Cir.1974), where the Court of Appeals found that "all

logically related events entitling a person to institute a legal action against another generally are

regarded as comprising a transaction or occurrence."  In the immediate case, there is no

allegation that the 670 defendants in these actions even know each other, much less that they

---

[7] Defendants recognize that such judicial analysis has not been universal.  *See, e.g., Motown Records v. Does 1-252*, No. 1:04-CV-439-WBH (N.D. Ga. Aug. 16, 2004) (denying motion to quash); *Virgin Records Am. v. Does 1-44,* No. 1:04-CV-0438-CC (N.D. Ga. March 3, 2004) (granting leave to take expedited discovery); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) (applying First Amendment balancing test but denying as premature motion to quash based on misjoinder and lack of personal jurisdiction).

engaged in an intentional conspiracy.  Nor does the allegation of a similar method for committing the alleged illegal activity create a basis for joinder.  *See, e.g.*, *Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974) (refusing to allow 164 insurance companies to be joined in a single action on the basis that they allegedly used the same methods to cheat agents, describing that attempted joinder as "a gross abuse of procedure").

Plaintiff may argue that its allegations here are based upon use of the Internet to infringe the same movie.  Such an argument does not change the analysis.  Whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated Defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses.  This kind of attenuated relationship is not sufficient for joinder.  *See, e.g., BMG Music v. Does 1-203*, 2004 WL 953888, at *1.

Even if the requirements for permissive joinder under Rule 20(a)(2) had been met, this Court would have broad discretion to refuse joinder or to sever the case under Rule 21 in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.  *See, e.g.*, *Acevedo v. Allsup's Convenience Stores*, 600 F.3d 516, 521 (5th Cir. 2010) (citing *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir.1995)), *Morris v. Northrop Grumman*, 37 F. Supp. 2d 556, 581 (E.D.N.Y.1999), and *Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir.2000)).  The Court should at minimum exercise that discretion here.  Joining thousands of unrelated defendants in one lawsuit here may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed.[8]  Because this improper joining of these hundreds of Doe

---

[8] Several courts that have considered joinder in mass infringement cases have also noted that by filing a single lawsuit, the plaintiffs have avoided paying multiple filing fees. *See, e.g.*, General Order, *UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004, (Exhibit A to RJN) (ordering severance of 254 defendants sued in four cases before it, and noting that: "[t]he filing fees for the recent four cases totaled $600, whereas the filing fees for 254 separate cases would have been $38,100.").

Defendants into this one lawsuit raises serious questions of individual fairness and individual justice, the Court should sever the Defendants and "drop" Does 2-670 from this case.  *See* Fed. R. Civ. P. 21.

**III.   Plaintiff Has Not Satisfied the Requirements Imposed by the First Amendment On Litigants Seeking to Unmask Anonymous Speakers.**

Plaintiffs are often allowed discovery at the outset of a lawsuit to identify otherwise unknown persons alleged to have committed a legal wrong.  However, in its motion for leave to seek early discovery, Plaintiff failed to properly apprise the Court of the appropriate discovery standard in cases where, as here, Defendants were engaging in anonymous communication and Plaintiff's claims arise from those activities.  Especially given the number of Doe Defendants affected and the pornographic nature of the movie in question, it is crucial that the Court apply the correct procedure here and require Plaintiffs to follow the appropriate procedures before individuals' identities are disclosed.

**A.   <u>The Right to Engage in Anonymous Speech is Protected by the First Amendment.</u>**

The United States Supreme Court has consistently upheld the right to anonymous speech in a variety of contexts, noting that "[a]nonymity is a shield from the tyranny of the majority . . . [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from retaliation . . .  at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995); *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 192 (1999); *Talley v. California*, 362 U.S. 60, 64 (1960).  This fundamental right enjoys the same protections whether the context for speech and association is an anonymous political leaflet, an Internet message board or a video-sharing site.  *Reno v. ACLU*, 521 U.S. 844, 870 (1997) (there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to" the Internet).  *See also*, *e.g.*, *Doe v. 2themart.com*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (stating that the Internet promotes the "free exchange of ideas" because people can easily engage in such exchanges anonymously).

14

First Amendment protection extends to the anonymous publication of expressive works on the Internet, even if the publication is alleged to infringe copyrights. *See Sony Music Entm't Inc.*, 326 F. Supp. 2d at 564 ("The use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection."). *See also, e.g., In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C.), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003); *Interscope Records v. Does*, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008); *UMG Recordings, Inc. v. Does 1-4*, No. 06-0652, 2006 WL 1343597, at *2 (N.D. Cal. Mar. 6, 2006). In *Sony*, the court concluded that a file sharer is "making a statement" by downloading a work without charge or license. *Sony*, 326 F. Supp. 2d at 564. In addition, a file sharer is expressing himself through the selection of content and by making it available to others. *Id*. Although sharing creative content is not "political expression" entitled to the "broadest protection," a file sharer is still entitled to "some level of First Amendment protection." *Id*.

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts to pierce anonymity are subject to a qualified privilege.[9] Courts must "be vigilant . . . [and] guard against undue hindrances to . . . the exchange of ideas." *Buckley*, 525 U.S. at 192. Just as in other cases in which litigants seek information that may be privileged, courts must consider the privilege before authorizing discovery. *See, e.g., Sony*, 326 F. Supp. at 565 ("Against the backdrop of First Amendment protection for anonymous speech, courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns."); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.").

---

[9] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations. *See, e.g., New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

Only a compelling government interest can overcome such First Amendment rights, and the mere filing of a lawsuit does not make the identification of a defendant a compelling interest unless there is good reason to believe that the suit has a realistic chance of being successful. The identification of an anonymous speaker is a form of relief to the plaintiff (because it can enable extra-judicial self-help such as that seen in these mass lawsuits), and it harms the anonymous defendant, because once the right of anonymous expression is taken away, it cannot be recovered. Relief – an order that benefits the plaintiff and hurts the defendant – is not customarily given without some proof of wrongdoing. Finally, if the courts allows anonymous speakers to be identified any time someone is willing to pay the filing fee for a lawsuit, we risk creating a significant chilling effect for anonymous speakers who are worried about the improper consequences of having their identities revealed.

On the other hand, the protection of anonymity should not be so great that plaintiffs with meritorious legal claims are unable to obtain redress of their grievances. If the rules make it too difficult to identify anonymous speakers, even when their speech abused the rights of others, the rules will unduly encourage irresponsible online speech. The need, therefore, is for the preservation of a legal and procedural standard that balances the rights of the anonymous speaker who claims to have done no wrong and the rights of the allegedly wronged speaker.

Put in constitutional terms, the constitutional privilege to remain anonymous is not absolute. Plaintiffs may properly seek information necessary to pursue meritorious litigation. *See, e.g., Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005) ("Certain classes of speech, including defamatory and libelous speech, are entitled to no constitutional protection."). However, litigants may not use the discovery power to uncover the identities of people without an appropriate basis. Accordingly, courts evaluating attempts to unmask anonymous speakers in cases similar to the one at hand have adopted standards that balance one person's right to speak anonymously with a litigant's legitimate need to pursue a claim.

In its motion for early discovery, Plaintiff relies on a long-abandoned qualified privilege test found in *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999) .

16

Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference ("Plaintiff's Motion") at ¶ 6. However, since 2005 this test has been superceded in the same district in which it originated as insufficiently protective of the First Amendment interests of Internet speakers. *See generally Highfields Capital Mgmt, L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005); *USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d 901 (N.D. Cal. 2010).[10] Instead, courts rely on the seminal case of *Dendrite Int'l, Inc. v. Doe No. 3,* 775 A.2d 756 (N.J. App. 2001) in which the New Jersey Appellate Division adopted a four-prong test for protecting anonymous speakers. Texas is among the many states across the country, several of which are cited in footnote 11 below, where courts have followed *Dendrite. See, e.g., In re Does 1-10*, 242 S.W.3d 805 (Tex. Ct. App. 2007).

Under *Dendrite*, a plaintiff must:

1) make reasonable efforts to notify the accused Internet user of the pendency of the identification proceeding and explain how to present a defense;

2) set forth the exact actions of each Doe defendant that constitute actionable cause;

3) allege all elements of the cause of action and introduce prima facie evidence for each Doe defendant sufficient to survive a motion for summary judgment; and

4) "[a]ssuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the

---

[10] For examples of state appellate courts that have also applied tests far more stringent than *Seescandy.com, see, e.g., Mobilisa, Inc. v. Doe*, 170 P.3d 712, 720 (Ariz. Ct. App. 2007) (holding that the *Seescandy.com* motion to dismiss standard "set[s] the bar too low, chilling potential speakers from speaking anonymously on the internet" and that requiring a plaintiff to put forth all elements of a prima facie case instead of merely a short and plain statement showing the plaintiff is entitled to relief ensures "redress [for] legitimate misuses of speech rather than . . . a means to retaliate against or chill legitimate uses of speech."); *Cahill*, 884 A.2d at 460 ("We conclude that the summary judgment standard is the appropriate test by which to strike the balance between a defamation plaintiff's right to protect his reputation and a defendant's right to exercise free speech anonymously."); *Krinsky v. Doe 6*, 72 Cal. Rptr. 3d 231 (Cal. Ct. App. 2008); *Independent Newspapers v. Brodie*, 966 A.2d 432 (Md. 2009), *Solers, Inc. v. Doe*, 977 A.2d 941 (D.C. 2009); and *Mortgage Specialists v. Implode-Explode Heavy Industries*, 999 A.2d 184 (N.H. 2010). Federal courts applying such tests include *Doe I and Doe II v. Individuals whose true names are unknown*, 561 F. Supp. 2d 249 (D. Conn. 2008); *Best Western Int'l v Doe*, No. CV-06-1537-PHX-DGC, 2006 WL 2091695 (D. Ariz. Jul. 25 2006); *Sinclair*, 596 F. Supp. 2d 128; and *Salehoo v. Doe*, No. C10-0671JLR, 2010 WL 2773801 (W.D. Wash. July 12, 2010).

disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."

*Dendrite*, 775 A.2d at 760-61.  The *Dendrite* test most accurately and cogently outlines the important First Amendment interests of the Doe defendants and should be applied here.

> **B.    Because Plaintiff's Proposed Discovery Cannot as Proposed Survive the Scrutiny Required by the First Amendment, Plaintiff's Motion Must Be Denied.**

The Plaintiff fails the *Dendrite* test demanded of litigants seeking the disclosure of the identities of anonymous speakers; consequently, Plaintiff's request for the issuance of early discovery should be denied.

> **1.    Plaintiff Has Not Made the Requisite *Prima Facie* Case for Each Defendant.**

Critically, Plaintiff has not provided sufficient *prima facie* evidence that any Defendant infringed Plaintiff's exclusive right to reproduce and distribute its copyrighted work.  Plaintiff contends that "Defendants collectively participated, via the internet, in the unlawful reproduction and distribution of Plaintiff's copyrighted motion picture, 'Der Gute Onkel,' by means of file transfer technology called, BitTorrent."  Complaint at ¶ 4.  However, in support of this contention, Plaintiff proffers only the following factual allegations:  (1) that by means of an undisclosed "proprietary technology," Plaintiff's agent "track[ed] [the] unauthorized reproduction and distribution" of its copyrighted work, and (2) the undisclosed proprietary technology generated an attached list of 670 IP addresses that allegedly correspond to copyright infringing Defendants.  Declaration of Matthias Schroder-Padewet in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference ("Schroder-Padewet Decl.") at ¶¶ 4, 6, 7.  Plaintiff does not meet its *prima facie* burden with this meager showing.

Instead of the conclusory, generalized showing made to date, Plaintiff must instead present *specific* evidence resulting from the investigation must be submitted for *each* Defendant.  At minimum, Plaintiff must present "competent evidence" regarding what the technology upon which it relies actually did in this case.  It must document the investigative process actually used to obtain Plaintiff's proffered allegations about each and every Defendant, as well as competent

evidence that would permit Defendants (and the Court) to evaluate the undisclosed technology's reliability and completeness.  Without such evidence, the Court must simply take Plaintiff's word for it that its "proprietary" technology functions in a way that confirms actual copyright infringement, for instance that it functioned properly in this instance, how the technology collected the IP addresses and linked them to an actual infringement of the movie, and that the IP addresses it provided are the IP addresses collected during this investigation, to ensure that no one is being falsely accused of downloading these pornographic movies.  Such a requirement would be reasonable and consistent with the requirements set forth by other courts in similar file sharing cases.  Those courts have found the *prima facie* burden met with the submission of screen shots showing the IP addresses of each Defendant (so the court can see that the submitted IP addresses match those discovered during the investigation), copies or real-time capture of the activities of the "licensed technologies" used, proof that the downloaded movie was the same as the Plaintiff's original film, and shots of the P2P server logs to which the Plaintiff claims to have had access.  *See, e.g., Elektra Ent. Group, Inc*, 2004 WL 2095581, at *4.  Such evidence is already available to the Plaintiff prior to discovery and must be provided as part of its *prima facie* showing.  *See Dendrite*, 775 A.2d at 154-55 (presenting allegations of a link between Defendant's posts and stock prices without proof of causation was not sufficient to survive the heightened discovery standard provided by the First Amendment). *See also* Schoen Decl. at ¶¶ 25-26.

Moreover, the allegations of the Complaint do not establish that Plaintiff has any right to sue for statutory damages or attorney fees.  The Complaint alleges that Plaintiff has applied for registration of its copyright in *Der Gute Onkel* but does not disclose the *date* on which this application was filed.  The fact that Plaintiff alleges application rather than completed registration implies that the application was filed not long before the Complaint was filed.  And under 17 U.S.C. § 412, a plaintiff cannot sue for statutory damages or attorney fees unless the infringement "commenced after first publication of the work and before the effective date of its registration, unless the registration is made within three months after the first publication of the

work." *Der Gute Onkel* was first published when it was publicly released on October 24, 2009.

Exhibit A to the Complaint reveals that the downloading for which Plaintiff has sued occurred no

earlier that May 30, 2010, for some of the Doe Defendants, and as late as September 20, 2010,

for others. It seems highly unlikely that the registration occurred less than three months before

any of the Defendants allegedly infringed the work. Plaintiff should be required, perhaps in

response to an order to show cause, to introduce evidence creating a *prima facie* case of

entitlement to sue *these* anonymous Defendants for statutory damages and attorney fees. If it

cannot, we urge the Court to consider exercising its inherent powers and strike the claims for

statutory damages and attorney fees.

> **2.     Given Plaintiff's Meager Factual Showing and the Immense Harm to Defendants that Would Occur if Plaintiff's Motion Was Granted, Defendants' First Amendment Interests Strongly Outweigh Plaintiff's "Need" for Their Identities.**

Even if Plaintiff could marginally satisfy the other steps of the Doe standard required by

the First Amendment as set forth in *Dendrite et al.*, the Court must still "balance the defendant's

First Amendment right of anonymous free speech against the strength of the *prima facie* case

presented and the necessity for the disclosure of the anonymous defendant's identity to allow the

plaintiff to properly proceed." *Dendrite*, 775 A.2d at 760-61. To be sure, creators of

pornography have the same protections as other copyright holders, but the pornographic nature

of the material that Plaintiff alleges has been improperly downloaded creates a very serious risk

of reputational harm resulting from a mistaken identification. And especially given the

Plaintiff's improper joinder of over 600 Defendants over whom the Court cannot exercise

personal jurisdiction, as well as the lack of transparency about the means by which the Plaintiff

generated its list of "infringers," the Court should exercise great caution and prevent Plaintiff

from bypassing procedural protections and taking shortcuts to achieve its end.

Although Plaintiff has not elaborated on its motives in bringing suit, the invasive,

sweeping manner in which it was brought indicates that it hopes to leverage the risk of public

embarrassment to convince Defendants to quickly capitulate, whether or not they did anything

wrong.  Plaintiff's lawyer has not been shy about telling the press that he expects to get settlements precisely because many people who download pornography are unwilling to risk being publicly identified as having done so.  For example, he told the *Texas Lawyer*, "You have people that might be OK purchasing music off iTunes, but they're not OK letting their wife know that they are purchasing pornography."  John Council, *Adult Film Company's Suit Shows Texas Is Good for Copyright Cases,* TEXAS LAWYER, Oct. 4, 2010, available at http://www.law.com/jsp/tx/PubArticleTX.jsp?id=1202472786304&slreturn=1&hbxlogin=1. Consequently, he bragged, once they are identified, "Most people just call in to settle. We have a 45 percent settlement rate."[11]

Moreover, the settlement amount is, we believe, carefully selected to be less than most Defendants would have to spend to hire a lawyer to defend themselves, even though it is significantly more than the plaintiff stands to gain from an award of actual damages.  Plaintiffs' lawyers in this area are able to demand settlements in the four-figure range not only because they can hold out the threat of public exposure but also because they can threaten to sue for statutory damages and attorney fees.  Such relief, however, appears to be unavailable in this case because (as discussed above at page 20), it appears that the copyright in *Der Gute Onkel* was not registered until long after the first date of publication, in October 2009.  Plaintiff's quest for identifying information in this case, therefore, appears to be nothing more than an effort to use the judicial process to extract settlements on a mass scale.

Indeed, Plaintiff's lawsuit is consistent with a coordinated strategy of porn industry representatives who have clearly indicated that the coercive threat of public disclosure motivates the recent increase in dragnet copyright cases brought by porn publishers.  Discussing this new litigation strategy, Pink Visual, which recently "rall[ied] dozens of adult entertainment studio operators at an unprecedented Content Protection Retreat in Arizona in October to train in ways

---

[11] The potential for embarrassment is augmented when the suit is filed over alleged copyright infringement of gay pornography, which is not at issue in this case but is involved in several other mass infringement actions filed by the same plaintiff's attorney.  *See, e.g.*, *Lucas Entertainment v Does*, No. 3:10-01537-B-BD (N.D. Tex.).

21

to combat piracy and defend intellectual property," stated in an interview with Agence France Presse:

> "It seems like it will be quite embarrassing for whichever user ends up in a lawsuit about using a popular shemale title," Vivas said, using a term that refers to a person who has female features but male genitalia.
>
> "When it comes to private sexual fantasies and fetishes, going public is probably not worth the risk that these torrent and peer-to-peer users are taking."

*Porn Titans Come Together to Expose Pirates*, THE INDEPENDENT, September 27, 2010, available at http://www.independent.co.uk/arts-entertainment/films/porn-titans-come-together-to-expose-pirates-2090786.html. Other copyright lawyers have concurred that the threat of exposure as downloaders of pornography is well calculated to induce the Doe defendants to settle quickly. John Council, *Adult Film Company's Suit Shows Texas Is Good for Copyright Cases,* TEXAS LAWYER, Oct. 4, 2010 ("I would suppose that most people would want to settle rather than being named in a lawsuit of this nature.").

The success or failure of Plaintiff's lawsuit should ultimately rest on the merits of its claim against each individual Doe, not upon the risk of targeting through an insufficiently pleaded and improperly joined "name and shame" campaign. The Court should at minimum require that Plaintiff resolve the serious shortcomings in its evidentiary showing before the Court authorizes any discovery to proceed.

### 3.      Plaintiff Must Ensure that Defendants Receive Notice of Its Pending Claim and Its Efforts to Unmask Them.

In addition to the substantive requirements identified by *Dendrite* and its progeny, the First Amendment also requires that the anonymous Defendants be given adequate notice of the pending action and of Plaintiff's attempts to unmask them. *Dendrite*, 775 A.2d at 760-61. Plaintiff must be required to make such efforts so that Defendants can fully explore defenses available to them. The undersigned counsel are grateful to the Court for the opportunity represent the 670 Defendants *ad litem* in the limited capacity of opposing Plaintiff's motion for the authorization of early discovery. However, unique Defendants may have unique defenses

separate from those discussed here that by definition cannot be raised prior to the point that Defendants are aware that the litigation even exists.

Accordingly, in the event that the Court permits discovery to go forward, this Court should require that any subpoena in this case by Plaintiff to Internet Service Providers (ISPs) seeking the identity of anonymous Internet users must be accompanied by a cover notice ordering the ISP:

> (a) to notify, within seven days of service of the subpoena, any person whose information has been sought that such information may be disclosed, and briefly describe their rights and options for protecting such information; and

> (b) to provide sufficient opportunity for the subscriber to exercise those rights, such as by moving to quash.  (Plaintiff may be required to compensate the ISP for additional costs, if any, associated with providing notice.)

To assist the Court, counsel has attached hereto a draft notice modeled on the procedures issued by other courts hearing similar cases.  *See* Exhibit 1 to this Opposition.  The notice has been further updated based on counsel's experience assisting individuals identified in these cases to better explain the situation and address common questions.  Such procedures will help ensure that Plaintiff, Defendants, and the ISPs involved all have a fair opportunity to represent their interests.

## CONCLUSION

Plaintiff has the right to seek legal redress for alleged copyright infringement, but it must follow the basic procedures and due process requirements applicable to all civil litigation. Failure to abide by these procedures is not only contrary to law, it puts the anonymous Defendants at a disadvantage where they will first lose their constitutionally protected anonymity and then find settlement economically more feasible than litigation in a foreign jurisdiction, even though they may have committed no unlawful act or may otherwise have meritorious defenses.

Defendants therefore respectfully urge this Court to deny Plaintiff's request for early discovery on the grounds that (a) it lacks personal jurisdiction over 633 of the 670 Defendants, (b) all 670 Defendants were improperly joined in this single action, and (c) Plaintiff cannot meet

the requirements of the First Amendment designed to protect anonymous speech.  Morevoer, given the unavoidable jurisdictional and joinder deficiencies inherent in Plaintiff's Complaint, and the serious concern about the availability of statutory damages which are the big threat levied against them, Defendants suggest that the Court dismiss the action *sua sponte* and require that Plaintiff refile individual cases against individual Defendants in courts that can properly exercise jurisdiction.  If the cases are refiled with claims for statutory damages and attorney fees, Plaintiff should be required to show that such relief is available.

Dated: November 24, 2010                    Respectfully submitted,

                                            *s/Matthew Zimmerman*_____
                                            Matthew Zimmerman
                                            *mattz@eff.org*
                                            Cindy Cohn
                                            *cindy@eff.org*
                                            ELECTRONIC FRONTIER FOUNDATION
                                            454 Shotwell Street
                                            San Francisco, CA 94110
                                            T: (415) 436-9333
                                            F: (415) 436-9993
                                            www.eff.org

                                            Paul Alan Levy
                                            *plevy@citizen.org*
                                            Public Citizen Litigation Group
                                            1600 - 20th Street, NW
                                            Washington, DC 20009
                                            T: (202) 588-1000
                                            http://www.citizen.org/litigation

### *Certificate of Service*

On     November 24, 2010     I electronically submitted the foregoing

document with the clerk of court for the U.S. District Court, Northern District

of Texas, using the electronic case filing system of the court. I hereby certify

that I have served all counsel and/or *pro se* parties of record electronically or

by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

s/ Matthew Zimmerman