**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| MICK HAIG PRODUCTIONS, E.K.  )  <br> )  <br>  Plaintiff,  )  <br> )  <br>  v.  )  <br> )  <br>  DOES 1-670  )  <br> )  <br>  Defendant.  )  <br> )  <br> )  <br> )  <br> ) | C.A. 3:10-cv-01900-N |

**DECLARATION OF SETH SCHOEN**

I, Seth Schoen, declare as follows:

  1. I am a Senior Staff Technologist with the Electronic Frontier Foundation (EFF), and I make this declaration on my own personal knowledge. I have worked with computers and computer networks for over a decade, have testified about electronic communications systems in two courts and before the United States Sentencing Commission, and have submitted declarations similar to my present declaration to the Federal courts in at least five other matters.

  2. The purpose of this declaration is to set forth facts that establish that many of the unnamed Defendants in the above-referenced case (hereinafter "Does" or "Doe Defendants") use Internet connections likely located physically outside of the State of Texas. These facts are readily available to Plaintiff from free, public Internet sources and have been readily available since well before the time Plaintiff filed this lawsuit.

  3. By reviewing Exhibit A to the Complaint, I compiled a list of the Internet Protocol (IP) addresses that Plaintiff attributes to each of the Doe Defendants.

  4. There exist many tools freely available to the public that help reveal where a person using a particular IP address is likely to be physically located. This process is often referred to as "geolocation." This information is commonly used for many purposes, such as customizing the language or content of web sites based on inferences about where visitors are accessing the

site from. For example, Google, Inc., uses geolocation to choose to display its web site in German to people coming from Germany, in French to people coming from France, and so on. It also uses geolocation to display ads and results related to particular cities or regions to people accessing its site from those cities or regions.

5. One means of learning about where an IP address is physically located is known as "reverse domain name service lookup" or "reverse DNS." When an Internet service provider ("ISP") allocates or prepares to allocate IP addresses to customers, it typically creates and publishes database records assigning a human-readable "domain name" to each numerical IP address. The reverse lookup information can be obtained by anyone using a program such as "host," which is a standard program included with many computer operating systems, or with any of several web-based tools such as the DNS lookup service at <http://lookupserver.com/>.

6. One of the purposes of reverse DNS is to help interested parties learn more about what a computer is used for, what organization's network it is connected to, and, in many cases, where the computer is physically located. Typically, for home users of dial-up or broadband connections, such as DSL or cable-modem services, a domain name obtained from reverse DNS will identify which ISP assigned the IP address.

7. In addition, a domain name will frequently incorporate an approximate physical location, such as the name of a municipal area, state, or region. For example, one of the Does being sued here – Doe Defendant #81, mentioned on page 2 of Exhibit A to the Complaint – is identified by the IP address 204.210.99.200 and described by Plaintiff as a subscriber of Road Runner. The reverse DNS database identifies this computer as cpe-204-210-99-200.hawaii.res.rr.com, confirming Plaintiff's suggestion that this Doe is a Road Runner ("rr.com") customer, but adding the additional detail that the likely physical location of the computer is in the state of Hawaii. This means that in all likelihood, the individual who used this IP address is located in Hawaii.

8. Although Internet service providers are not required to publish this information, and although it is sometimes only given to state-level precision, it can, when available, be a useful

source of data about where an individual Internet connection is most likely located.

9. I looked at 670 IP addresses that were referenced in this suit. For each of the 670 IP addresses alleged by Plaintiff to belong to a Doe defendant, I used the "host" program to perform a reverse lookup against the publicly-accessible reverse DNS service.

10. The results of this process generally confirmed Plaintiff's association of particular IP addresses with particular ISPs. Additionally, the results of this process generally strongly suggested a geographic location for most individual defendants. In other words, most of the Does listed in this lawsuit can be associated by the host reverse DNS look-up with both an Internet service provider and a geographic location and this process was equally free and available to Plaintiffs as it was to me.

11. Reverse DNS records indicate that Does in this lawsuit include customers with Internet connections located in or near Hawaii; Maine; Portland, Oregon; Southern California; New York City; the Tampa Bay Area in Florida; Philadelphia, PA; Columbus, OH; Washington, DC; and other states and regions throughout the United States.

12. In addition to reverse DNS information, another means of learning where an IP address is located is to use a public database operated by the American Registry for Internet Numbers ("ARIN database"). ARIN is the authority responsible for the initial allocation of IP addresses to ISPs located in the United States. ARIN maintains public records indicating to whom a given IP address has been allocated. Large ISPs may apply to ARIN multiple times to receive multiple "blocks" or ranges of IP addresses. Each such block may be dedicated to a particular purpose or geographic area.

13. The ARIN database can be searched using a public web site provided by ARIN at <https://www.arin.net/>, or by using a program called "whois," which is a standard part of some operating systems and performs the same database-searching function. There is no charge for searching the ARIN database.

14. For example, Doe Defendant #57 is identified by the IP address 174.52.249.111. I searched the ARIN whois database for this address and learned that this address is part of a

network assigned to Comcast Cable Communications, Inc., and designated UTAH-20.  This suggests that this network provides service to customers who are in the state of Utah.  Both of these inferences are consistent with the reverse DNS record for this IP address, which is c-174-52-249-111.hsd1.ut.comcast.net.

15.    In addition, several companies collect and continually update geographic information about IP address locations from a variety of data sources, and collect this information in databases called "geolocation databases."  Geolocation databases are commonly used by web site operators who are interested in finding out the approximate physical location of their web visitors.  Since web site operators are often very interested in such information, there is considerable demand for geolocation databases.

16.    Geolocation databases may be sold or given away for free.  One very popular geolocation database is the "GeoIP" database maintained by MaxMind, Inc., a Boston company that specializes in geolocation technology.  In addition to other sources of information, MaxMind explains that it "employ[s] user-entered location data from sites that ask web visitors to provide their geographic location" in order to learn which IP address ranges correspond to which cities and states.  MaxMind web site, <http://www.maxmind.com/app/ip-locate> (accessed November 19, 2010).

17.    A version of the MaxMind GeoIP geolocation database is freely available for anyone to download from MaxMind.  The company claims that this free version can determine the location of "79% [of U.S. IP addresses] within a 25 mile radius."  MaxMind web site, <http://www.maxmind.com/app/geolitecity> (accessed November 19, 2010).

18.    I downloaded this freely available database and looked up each Doe Defendant IP address in it, obtaining an estimated city and state location for each such address.

19.    Because DSL and cable modem connections are provided from local hubs to users in a particular geographic region, there is good reason to believe that the geographic location data obtained by these methods actually reflects the physical location of the Internet connection, at least in general terms.  In other words, although geolocation data is not perfectly accurate, the

geographic designations obtained by these methods likely indicate the approximate locations of the residences or other venues where the Does use their Internet-connected computers.

20. I have attached hereto as Exhibit A to this Declaration a list of the reverse DNS names of the Doe Defendants' IP addresses, as well as the estimated physical location of each such IP address according to the freely available version of the MaxMind GeoIP database.

21. In my experience, computer professionals are generally aware of the existence and function of the reverse DNS and whois services, as well as geolocation databases such as the GeoIP database, and would use any or all of these sources of information when they needed to learn where a given IP address was physically located. These techniques are readily and easily available to Plaintiffs, their attorney, and to the computer professionals they have employed to perform the investigations leading to this lawsuit.

22. In fact, in paragraph 7 of his declaration Mr. Schroder-Padewet attests that he submitted the list of addresses he collected to such a "trusted, commercial IP lookup service" in order to identify the internet service provider for each IP address.

23. Though the MaxMind GeoIP database and reverse DNS records are not perfectly accurate, I know of no reason to think that either source of information has a bias that makes it more or less likely that an individual IP address will appear to be located in Texas.

24. From the information available from the MaxMind geolocation database, 37 (thirty-seven) of the Doe Defendants appear to be located in the State of Texas, 631 outside of Texas, and 2 are not assigned to any location by the database. This puts around 5.5% of the Doe Defendants in the State of Texas.

25. Separately from the question of where Does reside, Plaintiffs did not submit all the details of the investigations that led them to accuse these Does of copyright infringement. These details could be important because simple methods of attempting to locate copyright infringers can easily go awry. For example, in 2008 researchers from the University of Washington found that, given then-prevalent methods for investigating BitTorrent transfers, it was not difficult for one user (from one IP address) to frame another user (at another IP address) for sharing files,

making it appear that they victim had shared files that they had not, in fact, ever attempted to share. The researchers experimentally framed their own laser printer and succeeded in eliciting false allegations of copyright infringement against it. See Michael Piatek, Tadayoshi Kohno, and Arvind Krishnamurthy, "Challenges and Directions for Monitoring P2P File Sharing Networks, or, Why My Printer Received a DMCA Takedown Notice," in *Proceedings of the 3rd USENIX Workshop on Hot Topics in Security*, July 29, 2008, available at <http://www.usenix.org/event/hotsec08/tech/full_papers/piatek/piatek.pdf>.

26. In order to ensure that such errors are not occurring, one would need to have a more complete description of the "licensed technology" mentioned in paragraph 6 of the Schroder-Padewet declaration and evidence of how it was used in this case. For instance, I have heard that in other copyright infringement lawsuits technologists have submitted copies or real-time capture of the activities of the "licensed technologies" used, as well as proof that the downloaded movie was the same as the Plaintiff's original film. Such evidence should be available to Plaintiffs' technologists here, since it mainly consists of documentation demonstrating that they actually did what they here attest to have done.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed in San Francisco, California.

Dated: November 23, 2010                        By: _____

## *Certificate of Service*

On _November 24, 2010_ I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

s/ Matthew Zimmerman