# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| MICK HAIG PRODUCTIONS, E.K., <br> HATTINGER STR. 88 <br> D-44789 BOCHUM, GERMANY <br><br>         Plaintiff, <br><br> v. <br><br> DOES 1-670 <br><br>         Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CA. 3:10-cv-1900-N <br> ) <br> ) <br> ) <br> ) <br> ) |

## **DEFENDANTS' MOTION FOR ATTORNEY'S FEES OR SANCTIONS**

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

Introduction ............................................................................................................................1

Background ............................................................................................................................2

**ARGUMENT** ........................................................................................................................4

    A.    The Court Should Impose Sanctions ...........................................................................4

    B.    In the Alternative, the Court Should Consider Awarding Attorney's Fees ................7

Conclusion .............................................................................................................................8

## TABLE OF AUTHORITIES

### CASES

*In re Air Crash at Charlotte, N.C.*,
    982 F. Supp. 1092 (D.S.C. 1997) ................................................................................. 5

*Assessment Technologies of WI v. WIREdata, Inc.*,
    361 F.3d 434 (7th Cir. 2004) ....................................................................................... 8

*In re Byrd, Inc.*,
    927 F.2d 1135 (10th Cir. 1991) .............................................................................. 5, 7

*Chambers v. NASCO, Inc.*
    501 U.S. 32 (1991) .................................................................................................. 5, 7

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) .................................................................................................... 5

*Dean v. Riser*,
    240 F.3d 505 (5th Cir. 2001) ...................................................................................... 8

*Preston Gate, LP v. Bukaty*,
    248 S.W.3d 892 (Tex. App. 2008) .............................................................................. 5

*Riviera Distributors, Inc. v. Jones*,
    517 F.3d 926 (7th Cir. 2008) ...................................................................................... 7

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) .................................................................................... 1

*Thomas v. Capital Sec. Svcs., Inc.*,
    836 F.2d 866 (5th Cir. 1988) .................................................................................. 6, 7

*Topalian v. Ehrman*,
    3 F.3d 931 (5th Cir. 1993) .......................................................................................... 6

*Willy v. Coastal Corp.*,
    503 U.S. 131 (1992) .................................................................................................... 5

## STATUTES AND RULES

17 U.S.C. § 505 .................................................................................................................. 2, 8

Federal Rules of Civil Procedure

    Rule 11 ............................................................................................................................ 6
    Rule 26 ............................................................................................................................ 7
    Rule 26(b)(5)(B) ............................................................................................................. 5
    Rule 26(f) .................................................................................................................... 1, 2
    Rule 26(g) ....................................................................................................................... 5
    Rule 26(g)(3) ............................................................................................................... 6, 7
    Rule 45(c)(1) ............................................................................................................... 5, 6
    Rule 45(d)(2)(B) ............................................................................................................. 5

## MISCELLANEOUS

1991 Advisory Committee Notes to Amended Rule F.R.C.P. 45(a) ........................................ 7

Patrick Michels, *Private Parts: Denton Attorney Pursuing Porn Downloaders Runs Into Judge and the EFF*, DALLAS OBSERVER (Feb. 7, 2010), http://blogs.dallasobserver.com/unfairpark/2011/02/ crying_onkel_evan_stone_drops.php .................................................................................... 4

Restatement (Second) of Torts § 682 (1977) ......................................................................... 5

Texas Disciplinary Rule of Professional Conduct § 4.04(a) .................................................. 5

59 Tex. Jur. 3d Process, Notices, and Subpoenas § 10 ........................................................... 5

**INTRODUCTION**

> "The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused."

*Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004).

Shortly before this action was voluntarily dismissed with prejudice, Docket No. ("DN") 9, counsel for Defendants learned that counsel for Plaintiff Mick Haig Productions, Evan Stone, engaged in serious misconduct. Counsel for the Defendants attempted to meet and confer with Mr. Stone, but when he was unwilling to do so, on January 26, 2011, counsel wrote to Mr. Stone to inquire into the details of his conduct. Rather than meet and confer, Mr. Stone filed a voluntary dismissal of the case with prejudice.

Specifically, notwithstanding the clear prohibition on issuing discovery prior to a Rule 26(f) discovery conference and the implicit acknowledgement of that prohibition in Plaintiff's "Memorandum of Points and Authorities in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference," Mr. Stone surreptitiously issued unauthorized subpoenas to an unknown number of internet service providers ("ISPs"), demanding the disclosure of the identities of anonymous Defendants so that he could pressure the alleged downloaders of pornography into settlement. Incredibly, months later Mr. Stone participated in the briefing of the very question of whether he should be allowed to issue discovery (*see* Plaintiff's Response to Opposition for Plaintiff's Motion for Leave to Take Discovery (DN 7)), all the while allowing ISPs to process the improperly issued subpoenas. Plaintiff's counsel's behavior demonstrates blatant contempt for the rule of law and the authority of this Court.

Moreover, the full extent of Mr. Stone's actions is not yet known because he refuses to meet and confer. Accordingly, rather than requesting a specific form of relief, Defendants instead ask this Court to order Mr. Stone to fully account for his actions so that the Court and Defendants can be made aware of the harm inflicted and so that they may respond accordingly. Once the Court has ascertained the full extent of Mr. Stone's actions, and the extent to which his client should properly bear responsibility for his actions ostensibly performed on his client's

1

behalf, the Court can then decide whether an award of attorney's fees under 17 U.S.C. § 505, discovery sanctions under the Federal Rules, or some other relief is appropriate. Defendants ask this Court to impose some sanction for Mr. Stone's conduct to send a message that should hardly be necessary: abusing the Court's authority to improperly investigate and push settlements onto litigation opponents will not be tolerated.

I. **BACKGROUND**

On September 21, 2010, Plaintiff Mick Haig Productions, a German marketer and distributor of pornography, filed suit against 670 anonymous Internet users, alleging that they infringed Plaintiff's copyright by downloading copies of its film "*Der Gute Onkel*." Complaint (DN 1). As Plaintiff explicitly acknowledged in a later filing, it was "absolutely correct" that Plaintiff "fil[ed] these lawsuits without the intention of litigating them." Plaintiff's Response to Opposition for Plaintiff's Motion for Leave to Take Discovery (DN 7) at 2. Ten days later, Plaintiff moved for expedited (pre-Rule 26(f) conference) discovery in order "to allow discovery to obtain the true identities and contact information of the defendants from their internet service providers," specifically by serving a Rule 45 subpoena to the service providers. Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference (DN 2) at 1. The memorandum supporting Plaintiff's Motion indicated (correctly) that Plaintiff's ability to serve discovery on the ISPs depended on whether the Court granted leave to take discovery: "If the Court grants this Motion, Plaintiff will serve necessary subpoenas requesting the identifying information in a timely manner." DN 2-2 at 3. Instead of granting the Motion outright, however, this Court ordered that the ISPs preserve their existing activity records "pending resolution of the Discovery Motion." Order of October 21, 2010 (DN 3). The Order did not permit Plaintiff's counsel to proceed with discovery.

The very next day, notwithstanding the Court's explicit decision to issue a preservation order instead of permitting Plaintiff to issue subpoenas, Mr. Stone sent a subpoena to (at least) Comcast Cable demanding that it produce Defendants' names and addresses. The subpoena instructed, in relevant part:

> YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
>
> Information, including name, addresses, telephone numbers, e-mail address and Media Control Addresses, sufficient to identify and contact all persons whose IP addresses are included in the attached spreadsheet.

Exhibit 2 to the Affidavit of Paul Alan Levy ("Levy Aff."). Other subpoenas appear to have been issued at or about the same time.

Four days later, on October 25, 2010, the Court appointed the undersigned as *ad litem* counsel for the purpose of responding to Plaintiff's Discovery Motion, "find[ing] that the Discovery Motion concerns matters that could materially affect the Defendant Does 1-670's interests." DN 4. One month later, on November 24, 2011, the undersigned opposed Plaintiff's Motion, arguing that the Court plainly did not have personal jurisdiction over the vast majority of the Defendants, that the 670 Defendants were improperly joined in a single action, and that the Plaintiff could not meet the appropriate First Amendment standard required of litigants seeking to unmask anonymous speakers. DN 5. In his brief, two-page Response, Mr. Stone indicated that he was aware that his Discovery Motion was still pending, and asked that "the Court grant Plaintiff's Motion for Leave to Take Discovery." DN 7 at 2.

On January 22, 2011, one of the Does contacted Defendants' counsel to ask about a Notice of Subpoena that he had received from Comcast. The Doe indicated that he and his wife were "terrified" about being falsely accused of being involved with the "junk" that Plaintiff produces. Levy Aff. ¶¶ 4-5 and Ex. 1. At Mr. Levy's request, Comcast provided him with a copy of the subpoena that Mr. Stone had sent, dated October 22, 2010, along with an undated cover letter. *Id.* ¶ 6 and Ex. 2. Defendants' counsel promptly and repeatedly made attempts to discuss the matter with Mr. Stone. But Mr. Stone responded neither to phone calls nor to emails. Mr. Stone's office did return one telephone call, but it was not Mr. Stone, but rather a woman who identified herself as Mr. Stone's assistant but said that Mr. Levy could not talk to Mr. Stone. *Id.* ¶ 8. On January 26, 2010, Mr. Levy sent Mr. Stone a letter asking for information about his discovery efforts, including how many subpoenas he had issued and to whom, whether any

3

information had been produced, whether he had communicated with any of the Does, and whether he had obtained any money from any of the Does in settlement. *Id.* ¶ 9 and Ex. 3.

Rather than responding to this letter, Mr. Stone filed a Notice of Dismissal With Prejudice. DN 9. His dismissal blamed the Court for frustrating his efforts to obtain discovery and for appointing counsel for the Does. It did not, however, acknowledge that Mr. Stone had already issued subpoenas despite the Court's failure to grant his motion for leave to proceed.[1]

Defendants' counsel have since been informed by a representative of Verizon that Verizon received a similar subpoena from Mr. Stone on around the same time. Affidavit of Matthew Zimmerman ("Zimmerman Aff."); Levy Aff. ¶ 13 and Ex. 5. Mr. Stone has to this day repeatedly refused to answer any questions regarding the number or scope of subpoenas improperly sent to these and other ISPs, the extent to which these ISPs complied with the subpoenas, whether Mr. Stone has spoken to any individuals identified pursuant to the improper subpoenas (notwithstanding the fact that all 670 Defendants were represented for purposes of this discovery dispute by ad litem counsel), or whether any of the anonymous Defendants settled with Mr. Stone on behalf of his client. Levy Aff. ¶¶ 11-12 and Ex. 4.

**ARGUMENT**

    **A.**    **The Court Should Impose Sanctions.**

The improper and knowing issuance of the barred subpoenas at issue, coupled with both his subsequent failure to minimize the harm resulting from his improper behavior (by, for example, withdrawing the subpoenas or informing the Court and Defendants that they had been issued) and his continued sham participation[2] in the briefing supporting a request for *subsequent* permission to perform the acts that already had been committed, subjects Mr. Stone to

---

[1] Mr. Stone has since expressed his feelings about the Court's orders in this case in stronger terms. *See*, *e.g.*, Patrick Michels, *Private Parts: Denton Attorney Pursuing Porn Downloaders Runs Into Judge and the EFF*, DALLAS OBSERVER (Feb. 7, 2010), http://blogs.dallasobserver.com/unfairpark/2011/02/crying_onkel_evan_stone_drops.php.

[2] *See*, *e.g.*, DN 7 at 1 (attempting to retroactively justify (without disclosing) the issuance of the subpoenas, stating, "In light of this impossibility [to conduct a Rule 26(f) conference], Plaintiff's Motion is a mere procedural formality.").

4

sanctions.³ *See* FEDERAL RULE OF CIVIL PROCEDURE 26(g) (imposing mandatory sanctions on a party who improperly certifies that a discovery request is "warranted by existing law"); F.R.C.P. 45(c)(1) (imposing mandatory sanctions on a subpoenaing party who imposes an undue burden); *In re Byrd, Inc.*, 927 F.2d 1135, 1136-38 (10th Cir. 1991) (granting sanctions under Rule 26(g) against litigant for serving a subpoena *duces tecum* on third-party in violation of both local and Federal Rules); *In re Air Crash at Charlotte, N.C.*, 982 F. Supp. 1092, 1095-96 (D.S.C. 1997) (imposing sanction for issue and service of invalid subpoena); *see also Chambers v. NASCO*, 501 U.S. 32, 44-46 (1991) (identifying a court's "inherent authority" to "determine whether it has been the victim of fraud," and to punish a party that has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or in "willful disobedience of a court order").⁴

Moreover, absent a complete accounting of Mr. Stone's improper behavior, one that he has thus far been unwilling to provide, his conduct must be considered ongoing. *See*, *e.g.*, F.R.C.P. 26(b)(5)(B) and 45(d)(2)(B) (requiring immediate return, sequester, or destruction of improperly obtained privileged materials). Accordingly, Defendants further request that the Court order Mr. Stone to provide a sworn accounting of all his actions related to the issuance and service of the improper subpoenas, with appropriate documentation, including (1) a list of all subpoenas he has issued in this case, (2) specification of all information that he obtained in response to the subpoenas, (3) identification of all Does with whom he or his office has

---

³ The dismissal of an action does not deprive a district court of jurisdiction to consider whether sanctions are appropriate for conduct during the litigation. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 137-138 (1992).

⁴ Serving an invalid and oppressive subpoena is also potentially actionable under Texas tort law as an abuse of process and subject to punishment as a violation of the Texas Rules of Professional Conduct. *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App. 2008); *see also* 59 Tex. Jur. 3d Process, Notices, and Subpoenas § 10 ("Abuse of process is the malicious misuse or misapplication of process in order to accomplish an ulterior purpose."); Restatement (Second) of Torts § 682 (1977) ("One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."); Texas Disciplinary Rule of Professional Conduct § 4.04(a) (a "lawyer shall not knowingly make a false statement of fact or law to a third person").

communicated, and (4) information about any settlement he entered into with any of the Doe Defendants. To the extent that any of these answers or documents includes identifying information about any of the Does, Mr. Stone should be ordered to file the complete information under seal while filing public copies from which the identifying information should be redacted. Mr. Stone should further be required to aver that he has provided complete information about each of these categories.

In addition, Defendants request that the Court (1) order the immediate withdrawal of any outstanding subpoenas; (2) order the return of any settlement payment obtained from any Defendant in this lawsuit; (3) enter a permanent injunction barring the disclosure or use by Mr. Stone, the Plaintiff, or any of their agents, of any information obtained pursuant to a subpoena in this action; and (4) impose an appropriate sanction in light of the circumstances, once they are fully known. *See Thomas v. Capital Sec. Svcs., Inc.*, 836 F.2d 866, 877 (5th Cir. 1988) ("The district court should carefully choose sanctions that foster the appropriate purpose of the rule, depending on the parties, the violation, and the nature of the case."). Defendants also request that the Court order Mr. Stone to provide each of the ISPs with a copy of its final order on this Motion and to ask the ISPs to send a copy of that order to each of the Does. Finally, pursuant to Rule 45(c)(1), Defendants request that Mr. Stone (or his client) be ordered to reimburse the ISPs for the reasonable expenses incurred to effect notice to the Does.

The nature of the appropriate sanction should be finalized once the scope of the violation has been determined; but when a violation of the Federal Rules is established, the imposition of sanctions is mandatory. F.R.C.P. 26(g)(3), 45(c)(1). *See also Thomas*, 836 F.2d at 876-78 (sanction "mandatory"); *Topalian v. Ehrman*, 3 F.3d 931, 936 n.5 (5th Cir. 1993) ("[T]he underlying principles elucidated in *Thomas* in the context of Rule 11 apply across-the-board to all of the district court's sanction powers."). This Court wields "broad discretion" in fashioning the appropriate sanction. *Id*. at 934. In crafting the sanction, the Court may consider (1) the specific conduct being punished or deterred, (2) the harms caused by the violation of the relevant Rule, (3) whether the incurred harm was reasonable and mitigated, and (4) whether the sanction

is the least severe sanction adequate to achieve the purpose of the rule under which it was imposed. *Id*. at 937. Ordinarily, a violation of Rule 26 warrants at least "an order to pay the reasonable expenses, including attorney's fees, caused by the violation." F.R.C.P. 26(g)(3). *See also In re Byrd, Inc.*, 927 F.2d at 1136-38 (granting attorney's fees under Rule 26(g)). Likewise, the "assessment of attorney's fees is undoubtedly within a court's inherent power." *Chambers*, 501 U.S. at 45.

Although the extent of Mr. Stone's possible misuse of information obtained through the subpoenas is one factor that should affect the sanction, the very issuance of the subpoena should result in stern sanctions. Since the 1991 Amendments to the Federal Rules of Civil Procedure, attorneys have been vested with the power, as officers of the Court, to issue subpoenas rather than having to obtain them from a clerk. As the Advisory Committee noted at the time the Amendments were adopted, "Necessarily accompanying the evolution of this power of the lawyer as an officer of the court is the development of increased responsibility and liability for the misuse of this power." 1991 Advisory Committee Notes to Amended Rule F.R.C.P. 45(a). Mr. Stone misused his power and he misused it knowingly. The accounting that Defendants seek here will show the extent to which he may have profited in this specific case. It will also show whether he engaged in other affirmative acts even after he knew, because of Defendants' brief (DN 7) and the Court's not having ruled, that there was a significant question whether issuance of the subpoena would be retrospectively approved. But in any event, the very issuance of the subpoenas was serious misconduct that merits sanctions.

      **B.**     **In the Alternative, the Court Should Consider Awarding Attorney's Fees.**

In the alternative, the Court should consider whether to award attorney's fees in favor of the Defendants as the prevailing parties. *See Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (noting that attorney's fees are available to prevailing parties under section 505 of the Copyright Code). The dismissal with prejudice made Defendants the prevailing parties under section 505 of the Copyright Code (*see* 17 U.S.C. § 505; *Riviera Distributors*, 517 F.3d at 927-28), which authorizes awards of attorney's fees in favor of the prevailing party. *See*

*Dean v. Riser*, 240 F.3d 505, 511 (5th Cir. 2001) (in civil rights case, dismissal with prejudice makes defendant the prevailing party so long as dismissal was to avoid adverse judgment). Indeed, the Copyright Code creates a strong incentive for copyright holders to pursue their claims, and for copyright defendants to yield through the provision of statutory damages when the copyright holder is the prevailing party. Consequently, the ready award of attorney's fees in favor of prevailing defendants is needed to give defendants an equivalent incentive to stand up for themselves and thus to promote the public interest in a fair balance between copyright owners and users. *Assessment Technologies of WI v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004).

The Copyright Code authorizes awards of attorney's fees only against the Plaintiff, not against Mr. Stone. Consequently, in the exercise of its discretion whether to proceed under the fees provision or under its sanctions authority, the Court should inquire whether and to what extent the Plaintiff was aware of Mr. Stone's conduct on its behalf. To the extent that Mr. Stone was acting at his client's behest, an award of attorney's fees would be more fair.

In any event, Defendants urge the Court to demand a full accounting from Mr. Stone of his actions in this case before deciding whether and how to use its authority to award fees and/or to award sanctions.

**CONCLUSION**

Discovery is not a game, nor is it a tool to be wielded irresponsibly as a means in and of itself to coerce extra-judicial concessions from litigation opponents. Plaintiff's counsel Evan Stone has taken inexcusable liberties at the expense of the Defendants and the Court. Moreover, given the nature of the material about which this suit was filed, it was entirely predictable that many of the Does who received notices of subpoena from their ISPs as a result of the improper subpoenas would experience serious distress at the prospect of public accusations of having some involvement in the distribution of pornographic material. And as noted in Defendants' Opposition to Plaintiff's Motion for expedited discovery (*see* DN 5 at 20-22), Mr. Stone and other lawyers who file cases of this sort are obviously aware of the anxiety that notice of their discovery can cause. Finally, the Court should consider the fact that Mr. Stone continues to

pursue copyright cases similar to this one and indeed specializes in the representation of clients who produce similar material. It is, therefore, imperative that the extent of his misconduct in this case be fully exposed, not only for the protection of the 670 Defendants targeted here, but also for future Defendants who may (unbeknownst to them) find their rights similarly threatened. Defendants respectfully ask this Court to demand a full accounting of Mr. Stone's actions regarding the subpoenas in this litigation, and subsequently to impose an appropriate sanction.

Dated: February 11, 2011           Respectfully submitted,

/s/ *Matthew Zimmerman*_____
Matthew Zimmerman
*mattz@eff.org*
Cindy Cohn
*cindy@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
T: (415) 436-9333
F: (415) 436-9993
www.eff.org

/s/ Paul Alan Levy_____
Paul Alan Levy
*plevy@citizen.org*
Public Citizen Litigation Group
1600 20th Street, NW
Washington, D.C. 20009
T: (202) 588-1000
http://www.citizen.org/litigation

Attorneys ad litem for Does 1-670

9

## CERTIFICATE OF SERVICE

     I certify that I am filing this brief through the Court's ECF systems, which will serve a copy on opposing counsel automatically.

                                              /s/ Paul Alan Levy

                                        Paul Alan Levy