UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MICK HAIG PRODUCTIONS, E.K., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 3:10-cv-01900-N |
| | ) | |
| DOES 1-670, | ) | |
| | ) | |
| Defendants. | ) | |

**[CORRECTED] AFFIDAVIT OF PAUL ALAN LEVY**

1. My name is Paul Alan Levy. The Court appointed me as one of the counsel ad litem for the Doe defendants in this case.

**Hourly Rate**

2. I was graduated in 1976 from the University of Chicago Law School and in 1973 from Reed College.

3. I am an active member of the Bars of the District of Columbia and New York. I am admitted to practice in the United States District Courts for the Districts of Colorado and Columbia and the Eastern District of Michigan, in the United States Courts of Appeals for every circuit except the Federal Circuit, and in the Supreme Court of the United States. I have been admitted pro hac vice in many different federal and state trial and appellate courts.

4. After law school, I served as a law clerk to the Honorable Wade H. McCree, Jr., of the United States Court of Appeals for the Sixth Circuit. When Judge McCree was appointed Solicitor General of the United States, I served as his Special Assistant.

5. Since December 1977, I have been employed as an attorney at Public Citizen Litigation

Group. I have represented parties and argued scores of cases in the United States Courts of Appeals, including three arguments en banc, as well as many cases in state supreme and intermediate appellate court; I have also argued four cases in the Supreme Court of the United States. In addition, I was the lead author of the merits briefs in several other Supreme Court cases. I have filed many amicus briefs in both the Supreme Court and state and federal courts of appeals, and have often been permitted to argue as amicus curiae in state appellate courts as well. In the academic year 1983-84, I took a leave of absence from Public Citizen to serve as a visiting professor at Cardozo Law School in New York. My biographical sketch in outline form, including my publications and the cases that I have handled in the Supreme Court (including cases in which I wrote the briefs but counsel who handled the case below did the oral argument), and a prose version of my resume, are attached.

6. For my first twenty-three years at Public Citizen, I specialized in representing individual workers in cases involving union democracy, union corruption, and organized employees' rights of access to judicial and administrative tribunals. However, for the past eleven years my specialty has shifted to Internet free speech cases, with a particular concentration in three areas — the right to speak anonymously online; the right of web hosts and Internet service providers to host comments by others without being subject to suit; and the right of people who want to comment on companies to use the intellectual property of the companies about which they are speaking.

7. I have spoken at law school, bar and other meetings in the United States and abroad about the protections for the right to communicate anonymously online. For example, I am a regular speaker on that topic at the Practicing Law Institute's annual conference on Communications Law in the Digital Age, and I spoke about the topic as part of my keynote address at the Conference on Balancing Free Expression and Security in Cyberspace, held by the United States Department of

State. I recently published an article on litigating subpoenas to identify online anonymous speakers in *Litigation*, the journal of the ABA's Litigation Section.

8. I have been litigating issues about online anonymity since early 2000. The leading authority establishing standards for adjudicating subpoenas to identify anonymous speakers is *Dendrite v. Doe*, 342 N.J. Super. 134, 775 A.2d 756 (N.J. App. 2001), where the court adopted the test that was originally proposed in an amicus brief that I filed on behalf Public Citizen (and as well as the ACLU of New Jersey), and advocated at oral argument that I presented for amici in that appeal. I have briefed and argued many subsequent cases involving online anonymity, sometimes on behalf of Does, sometime for amici curiae, and sometimes on behalf of message board hosts; the appellate cases were I have argued orally include *Independent Newspapers v. Brodie*, 966 A.2d 432 (Md. 2009), *Mobilisa v. Doe*, 170 P.3d 712 (Ariz. App. 2007), *Fitch v. Doe*, 869 A.2d at 725 (Me. 2005), and *Doe v. Cahill*, 884 A.2d 451 (Del. 2005). In addition, as co-counsel with lawyers from the American Civil Liberties Union and EFF, I have represented amici curiae in many of the foundational cases about the application of the *Dendrite* standard to mass copyright suits against anonymous alleged downloaders, beginning with *Sony Music Entertainment v. Does 1-40*, 326 F. Supp.2d 556 (S.D.N.Y. 2004), and most recently in *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp.2d 332 (D.D.C. 2011).

9. Because Public Citizen is a public interest group, we generally do not bill clients for our services. However, we regularly seek court-awarded attorney fees at the full hourly rates set by the market for the relevant community (as the Supreme Court has allowed non-profits to do, in cases such as *Blum v. Stenson*, 465 U.S. 886 (1984)). However, courts in Washington, D.C. have encouraged the use of the so-called *Laffey* matrix, named after the case in which it was first devised,

*Laffey v. Northwest Airlines*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). Courts in the District of Columbia use *Laffey* matrices to determine the reasonable rates of counsel seeking awards of attorney fees. *See Judicial Watch v. U.S. Dept. of Justice*, 774 F. Supp.2d 225, 232 (D.D.C. 2011); *Smith v. District of Columbia*, 466 F. Supp.2d 151, 156 (D.D.C. 2006); *Brown v. Pro Football*, 846 F. Supp. 108, 120 (D.D.C. 1994). In fact, our local federal judges urged the Government to create and maintain its own version of the *Laffey* matrix to reduce the amount of litigation over the hourly rates to be awarded for attorney fees.

10. There are two different versions of the *Laffey* matrix. One version is maintained by the United States Attorney's Office for the District of Columbia, showing the hourly rates that the United States Attorney's Office will accept for fee applications against the United States in cases not arising under the Equal Access to Justice Act. This version of *Laffey* matrix has been updated each year by applying the inflation rate, as determined by the local Consumer Price Index for All Urban Consumers (CPI-U), to the rates for previous years, going back to the hourly rates that were originally determined to be reasonable in the *Laffey* case. It can be found on our local United States Attorney's web site, http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf, and is attached as Exhibit 2. This matrix shows that for attorneys with at least 20 years following graduation from law school, the reasonable hourly rate is $495.

11. An "Adjusted Laffey Matrix" has been created that adjusts the hourly rates awarded in the *Laffey* case itself by using the inflation rate for legal services. http://www.laffeymatrix.com/see.html. Several federal decisions have specifically approved of the Adjusted Laffey Matrix, including *Ricks v. Barnes*, 2007 WL 956940, at *5 (D.D.C. Mar. 28, 2007); *Smith v. District of Columbia*, 466 F. Supp.2d 151, 156 (D.D.C. 2006); *Interfaith Community*

*Organization v. Honeywell Int'l*, 426 F.3d 694, 708-711 (3rd Cir. 2005); and *Salazar v. District of Columbia*, 123 F.Supp.2d 8, 14-15 (D.D.C. 2000). According the Adjusted Laffey Matrix, which is attached as Exhibit 3, for attorneys with at least 20 years following graduation from law school, the reasonable hourly rate is $734. My most recent fee applications, in a Massachusetts trademark case and a federal suit in Chicago involving the alleged responsibility of a message board host for anonymous messages that she had hosted, relied on the hourly rates in both *Laffey* matrices.

12. I believe that fees should be awarded for my time at the rate of $650 per hour, reflecting a rough average of the rates shown by the two different versions of the *Laffey* matrix.

**Hours Expended**

13. The application for fees for my services is based on my time records, as well as upon the case file. I keep my time records for cases using the computer on which I work in my office. I exercise billing judgment by, for example, not recording time spent on short telephone calls. Moreover, pursuant to our normal practice at Public Citizen, my briefs and correspondence were reviewed by one or more of my colleagues, but no fees are sought for the time of lawyers who are not on the papers in the case. Although I have included time spent communicating with the first Doe who contacted me about Mr. Stone's demanded for payment, and with the first Internet Service Provider whom I contacted to learn what Mr. Stone was doing, I seek no time for my subsequent contacts with other Does and other ISP's. I have also eliminated time spent on consulting with a witness who is familiar with copyright enforcement by the adult movie industry, who provided several insights into Evan Stone's practice but who was ultimately not willing to sign an affidavit for use in support of our motion for sanctions. My elimination of any needless duplication of effort and of unproductive work supports the request for an otherwise fully compensatory fee.

17. The following table lists the 8.1 hours that we are asking to be awarded to Public Citizen in this case:

| Date | Time | Service |
| --- | --- | --- |
| 1/22/11 | .1 | Contact Comcast about report from Doe |
| 1/23 | .1 | Communicate w/Doe re Stone demand |
| 1/24 | .2 | Communicate w/Comcast re Stone demand |
| 1/25 | .3 | Talk Doe re Stone demand |
|  | 1.5 | Draft letter to Stone re discov sent w/o leave |
| 1/26 | .4 | Talk Comcast re Stone overreach |
| 1/29 | .1 | Exchange with Stone, consult co-coun |
| 2/9 | 1.5 | Edit sanctions memo |
|  | 1.2 | Draft Levy affidavit for sanc mot |
| 2/10 | .3 | Edit sanctions memo |
| 2/11 | .5 | Final edit/proof/tables/filing of sanctions papers |
| 5/18 | .7 | Review Stone oppo, consult co-coun |
| 5/27 | .5 | Edit sanctions reply, affidavit |
| 10/6 | .7 | Levy Fee Affidavit, edit fee mem |
| TOTAL | 8.1 |  |

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct. Executed on October 7, 2011.

   /s/ Paul Alan Levy  
Paul Alan Levy

# EXHIBIT 1

# EXHIBIT 1

Paul Alan Levy is an attorney with the Public Citizen Litigation Group, a public interest law firm that is a division of the consumer advocacy organization Public Citizen. Among the issues on which the group litigates are federal health and safety regulation, consumer litigation, open government, union democracy, separation of powers, and the First Amendment. PCLG litigates cases at all levels of the federal and state judiciaries and has a substantial practice before federal regulatory agencies.

After working as a law clerk to Honorable Wade H. McCree, Jr. (United States Court of Appeals, Sixth Circuit) and Special Assistant to Solicitor General McCree, Paul joined the Litigation Group in December 1977 to represent workers in rank-and-file labor law cases, largely representing dissident union members in cases involving union governance. He has been there ever since, with the exception of a one-year sabbatical when he taught at Cardozo Law School. Over the years, he also developed subspecialties in some arcane issues of federal procedure such as removal jurisdiction, and the representation of "lawyers in trouble" from sanctions, contempt findings and the like (these days, though, as a defense lawyer, he files sanctions motions). He also pioneered Public Citizen's work on federal preemption of state law claims and objecting to collusive class action settlements.

He has argued scores of cases in United States Court of Appeals (three en banc). Moreover, he has argued four cases in Supreme Court of the United States, as well as writing briefs for parties in seven other cases. One odd aspect of his Supreme Court practice is that each of these eleven cases was decided 9-0 – win or lose.

Paul has specialized more recently in free speech issues arising on the Internet. He has litigated cases in state and federal courts throughout the country about the identification of anonymous Internet speakers. His amicus curiae brief in Dendrite v. Doe, whose approach was adopted by New Jersey's Superior Court Appellate Division, has become the model for other cases. His Internet practice also includes the defense of trademark and copyright claims brought as a means of suppressing critical web sites. His cases in this area, such as Bosley Medical v. Kremer and Lamparello v. Falwell, have established the right to create internet "gripe" sites that include the trademark names of companies in their domain names and meta tags. In Smith v. Wal-Mart Stores, he defended the right of a parodist to make fun of Wal-Mart's

trademarks. In arguing against the issuance of prior restraints in Bank Julius Baer v. Wikileaks, he had the key insight that the case had been filed without subject matter jurisdiction. For several years, Paul chaired subcommittees (on domain name litigation or on keyword advertising) of the American Bar Association's Intellectual Property Section.

Supreme Court Cases:

Lead author on briefs and argued:

Sims v. CIA (Freedom of Information Act)

West v. Conrail (statute of limitations in DFR case)

Lingle v. Norge (preemption of retaliatory discharge claims)

Masters, Mates & Pilots v. Brown (right to mailing lists in union election)

Lead or sole author of party's briefs, argued by other counsel:

DelCostello v. Teamsters (reply brief only: statute of limitations in DFR case)

Sheet Metal Workers v. Lynn (removal of elected union officer)

Wooddell v. IBEW (right to jury trial in LMRDA case; right to sue under union constitution)

North Star Steel v. Thomas (statute of limitations in WARN case)

Caterpillar v. Lewis (procedures for appealing removal decisions)

O'Connor v. Consolidated Coin Caterers Corp. (ADEA suit where rival hire is over 40)

Rivet v. Regions Bank (reply brief only: removability based on defense of res judicata)

# EXHIBIT 2

# EXHIBIT 2

# LAFFEY MATRIX -- 2003-2012
## (2009-10 rates were unchanged from 2008-09 rates)

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 | 11-12 |
|---|---|---|---|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 | 465 | 465 | 475 | 495 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 | 410 | 410 | 420 | 435 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 | 330 | 330 | 335 | 350 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 | 270 | 270 | 275 | 285 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 | 225 | 225 | 230 | 240 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 | 130 | 130 | 135 | 140 |

*Explanatory Notes:*

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does **not** apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2. This matrix is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "*Laffey* Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey*, 572 F. Supp. at 371.

3. The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82. The Matrix begins with those rates. *See Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4. Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated *Laffey* Matrix when determining whether fee awards under fee-shifting statutes are reasonable. *See, e.g.*, *Blackman v. District of Columbia*, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); *Jefferson v. Milvets System Technology, Inc.*, 986 F. Supp. 6, 11 (D.D.C. 1997); *Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin.*, 985 F. Supp. 1, 9-10 n.3 (D.D.C. 1997); *Martini v. Fed. Nat'l Mtg Ass'n*, 977 F. Supp. 482, 485 n.2 (D.D.C. 1997); *Park v. Howard University*, 881 F. Supp. 653, 654 (D.D.C. 1995).

# EXHIBIT 3

# EXHIBIT 3

# LAFFEY MATRIX

History

Case Law

Expert Opinions

See the Matrix

Contact us

Home

Links

|  |  |  | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students

graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

**CERTIFICATE OF SERVICE**

On October 7, 2011, I electronically submitted the [CORRECTED] AFFIDAVIT OF PAUL ALAN LEVY with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

      /s/ Matthew Zimmerman
Matthew Zimmerman (SBN 212423)
mattz@eff.org
Senior Staff Attorney
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA  94110
Tel: (415) 436-9333
Fax: (415) 436-3339

*Ad Litem Counsel For Defendants*

1