**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MICK HAIG PRODUCTIONS, E.K., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1900-N |
| | § | |
| DOES 1-670, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO MOTION FOR ATTORNEY'S FEES**

Plaintiff, Mick Haig Productions, E.K. comes now to respond to Movants' Motion for Attorney's Fees. The Motion at issue suffers from misapplied standards, errors in accounting and unwarranted hourly rates. As such, Plaintiff prays the Court modify the award of attorney's fees as follows: 1) limit the timeframe for fee accrual from February 7th – 11th, when Movants' research on sanctions began to when the Motion was filed; 2) base the reasonable hourly rate on the expertise and experience required for this Motion and in the community where this Court lies; 3) restrict hours purportedly billed-for legal work to actual legal work, and 4) order that the fees are dispersed among infringers and not into the coffers of Movants.

**I.     LIMIT THE TIMEFRAME FOR FEE ACCRUAL**

The Court's Order regarding sanctions against Stone states that Stone, "shall pay the *Ad Litems*' attorneys' fees and expenses reasonably incurred in bringing the motion for sanctions." Movants' timeline shows that research into the drafting of a Motion for Sanctions did not begin in earnest until February 7, 2011. (*See* Motion for Attorney's Fees at 3.; hereinafter, "Fee

Motion"). Prior actions, such as communication with potential defendants or non-party internet service providers, lie outside the scope of "bringing the motion for sanctions." even if those communications were caused by Stone's [mis]conduct.  Additionally, actions occurring after the motion for sanctions was filed, on February 11, 2011, expressly fall outside the scope of "bringing the motion"  It is therefore reasonable to limit the period for fee accrual from February 7, 2011 to February 11, 2011.

II.    **BASE THE REASONABLE HOURLY RATE ON APPLICABLE EXPERTISE AND EXPERIENCE AND THE APPROPRIATE COMMUNITY**

The Supreme Court has defined a reasonable hourly rate as "one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys."  *See Blum v. Stenson,* 465 U.S. 886, 893-94 (1984) (citations omitted).  The amount should be based on what "a reasonable, paying client would be willing to pay" *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 484 F.3d 162, 163 (2d. Cir. 2008).

Moreover, these hypothetical "reasonable, paying clients" and "competent counsel" are intended to be those in the relevant legal community.  While Movants' acknowledge that the relevant legal community is "the one in which the district court sits," (*See* Fee Motion at 2.) they then assert that an attorney's home market rates should be considered where "out-of-district counsel are proven to be necessary to secure adequate representation." *Id*.  Though this latter assertion may be applicable in some situations, Movants' fail to explain why "adequate representation" could only be secured by *their* representation as opposed to local counsel.

Below is an analysis of the reasonableness as per the Johnson factors. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 *Rev.'d on other Grounds*. (5th Cir. 1974).

1.  **The Time and Labor Required**

The trial judge should weigh the hours claimed against his own knowledge, experience,

and expertise of the time required to complete similar activities [i.e., a motion for sanctions]".

*Id*.  Also, "It is appropriate to distinguish between legal work, in the strict sense, and

investigation, clerical work, compilation of facts and statistics and other work which can often be

accomplished by non-lawyers but which a lawyer may do because he has no other help available.

Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a

lawyer does it." *Id*.  Here, contacting Stone, Defendants, or an internet service provider is

certainly something a paralegal could have done, or even a layperson.  It is worth noting that the

attorney who billed the most per hour, Paul Levy, did the least actual legal work.

2.  **The Novelty and Difficulty of the Questions and 3., The Skill Requisite to Perform the Legal Service Properly**

Although the overall situation may be novel, the only question at issue in Movants'

motion is whether sanctions and attorney's fees were warranted.  Plaintiff does not dispute the

Movants' expertise or experience in intellectual property law or internet law.  However, the

Court summarizes Stone's misconduct as the acts of  "issuing invalid subpoenas." (*See* Order

Granting Sanctions at 15.)  The only area of law implicated in the issuance of subpoenas is that

of Federal Civil Procedure.  Arguably, a first-year law student should be able to recognize such a

violation of the Federal Rules.  The Court itself even refers to Stone's [mis]conduct as a

"***textbook*** example."   (emphasis added)

4.  **The Preclusion of Other Employment by The Attorney Due to Acceptance of the Case**

Movants' have not alleged that they turned down other work during the period of time

they drafted the motion at issue.

5. **The Customary Fee; 6., Whether the Fee is Fixed or Contingent**

This situation is unusual enough that Movants' and Plaintiff together are hard-pressed to cite a "customary fee" for hiring an attorney to file a motion for sanctions, though should such a limited task be sought, the fee could not be contingent.

7. **Time Limitations Imposed by the Client or the Circumstances**

No such time limit existed in this case.

8. **The Amount Involved and the Results Obtained**

The amount involved is difficult to measure.  With no Defendants named or served in this case, the amount involved cannot be apportioned among them.  The results obtained by these attorneys in the case at large may be of some value to the clients beyond the attorneys' mere hourly rate, however, note again that this award only pertains to the work Movants' did in bringing the motion for sanctions.  In bringing that motion, they accomplished absolutely nothing for the clients.  The motion for attorney's fees would only appear to benefits the EFF and Public Citizen.

9. **The Experience, Reputation, and Ability of the Attorneys**

Plaintiff acknowledges the Experience, Reputation and Ability of Movants' in matters regarding civil liberties, intellectual property and internet law.  But Plaintiff does not acknowledge, nor to Movants' assert, that their collective experience, reputation or ability in disciplinary issues or the Federal Rules of Civil Procedure.

10. **The "Undesirability" of the Case**

In contrast to a civil rights case, where taking the case might gain a firm ignominy in the community, practically everyone except Plaintiff is celebrating the Movants' work here.  They don't deserve yet another pat on the back.

11. **The Nature and Length of the Professional Relationship With the Client**

Because no Defendant was ever named or served in this case, Movants cannot be said to have a relationship with any of them and are not deserving of higher fee considerations in this regard.

12. **Awards in Similar Cases**

Movants have not raised a single case cite to validate the actual numbers they are arguing neither the amount of time it takes a reasonable attorney to draft a motion for sanctions or the reasonableness of their fees in light of the fact that it is a non-expert task.  However, the amount of hours they are claiming is astronomical.  *See, e.g.*, "Given the length of the submissions by both parties on both [a motion for sanctions and a motion to compel] and the time spent in the Court for hearing on both motions, three hours is a reasonable amount of time for counsel to spend on both motions." *Entergy La., LLC v. Wackenhut Corp.*, 2010 U.S. Dist. LEXIS 127825


For further analysis regarding what a reasonable, paying client would be willing to pay, the Court should look to the 2nd Circuit's factors in *Arbor Hill*: "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics),  the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 484 F.3d 162, 163 (2d. Cir. 2008)

Nearly every one of these factors is relevant here, and all counsel a reduction in fees.  1) Deceptively, the 'case' was *not* complex, as the only portion for which fees are being awarded is the sanction motion, which did not invoke any expertise in intellectual property law.  2) This is an unknown because no other counsel is known for Defendants. 3) Again, the Court should not conflate the 'case' at large with the 'case' for the purposes of these fees.  The resources required to hire an attorney to move for sanctions are significantly smaller than the resources required to litigate a copyright infringement suit (even if it is an open and shut one); also, Plaintiff is not expending enormous resources, such that Defendants would feel as if they require "Cadillac lawyers" just to keep up.  4) See previous.  5) Movants had interests apart from their *Ad Litem* clients.  They have an express agenda they are trying to accomplish here, which has very little to do with their clients' individual rights or interests.  Additionally, their representation was initiated without any individual client's consent.  6)  These attorneys were originally acting pro bono.  Any 'client' would be quite surprised to find that she owed these intervening attorneys $22,000, much less a single cent.  7)  Movants took this case on for their own notoriety, and to develop a reputation as defenders of civil liberties.


III.   **RESTRICT HOURS PURPORTEDLY BILLED FOR LEGAL WORK TO ACTUAL LEGAL WORK**

As addressed in *Johnson*, the time and labor *required* are of some significance.  Phone calls to interested parties and internet service providers, along with post-submission editing of the motion cannot be considered "required" labor.  Certainly not labor warranting a $650/hr fee.  Plaintiff again prays the Court limit fees awarded to only the legal work done in "bringing the motion for sanctions."

IV.     **ORDER THAT THE FEES, IF AWARDED, ARE DISPERSED AMONG INFRINGERS**

It is critical to point out that it is the party, not the party's attorney, that is entitled to attorney's fees. *E.g., Venegas v. Mitchell*, 495 U.S. 82, 87 (1990); *Mathur v. Board of Trs. Of S. Ill. Univ.*, 317 F.3d 738, 741 (7th Cir. 2003). Thus, the party, not the attorney, must apply for the fees. *See Manning v. Astrue*, 510 F.3d 1247, 1251 (10th Cir. 2007). Here, no party has been identified as a defendant. Without an actual party moving for attorney's fees, an award of attorney's fees would appear to be wholly unwarranted. At a minimum, Plaintiff requests that the Court specify in its Order that the fees awarded to Movants are dispersed to the actual violators of Plaintiff's intellectual property rights.

Prior to instituting infringement litigation, similarly situated plaintiffs, independently and via counsel, have employed and continue to employ numerous countermeasures to combat online piracy. Stone in particular began his anti-piracy efforts, somewhat naively, by requesting that internet service providers, quite simply, admonish their customers for specific instances of infringement once put on notice of said infringement. Of the nations' largest providers, only a single company complied with this simple request, though such notifications are routine for major Hollywood studios and broadcasters. If the Court would Order Movants to follow through on their appointment as attorneys *Ad Litem*, by discovering and truly representing the actual violators of Plaintiff's copyrights, then those infringers would, at a minimum, finally be on notice of their wrongdoings. And only by such discovery, could the award of attorney's fees be properly apportioned.

For the foregoing reasons, Plaintiff prays the Court negate or severely lessen any award of attorney fees in the instant case.  Attached as Exhibit 1 is a proposed new fee schedule using the median hourly rate for Texas attorneys, as per the State Bar of Texas' Department of Research & Analysis 2009 Hourly Fact Sheet, of $234 per hour and limiting the hours to those hours actually required to bring the motion for sanctions.

Respectfully Submitted,

s/ *E. F. Stone*

Evan Stone
State Bar No. 24072371
624 W. University Dr., #386
Denton, Texas  76201
Office: 469-248-5238
Email:  lawoffice@wolfe-stone.com

### Certificate of Service

I certify that a copy of this response was served on relevant parties by e-mail through the Court's ECF notification system on October 14, 2011.

*E. F. Stone*