UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICK HAIG PRODUCTIONS, E.K., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-cv-01900-N |
| | ) | |
| DOES 1-670, | ) | |
| Defendants. | ) | |

**RESPONSE TO MOTION FOR STAY AND MOTION FOR CONTEMPT SANCTIONS**

Plaintiff's counsel Evan Stone is in contempt of the Court's recent sanctions order.  Instead of complying with the order's clear terms, Mr. Stone filed an untimely and meritless motion for a stay.  Enough is enough.  Defendants' ad litem counsel ask that the Court deny Mr. Stone's untimely motion and impose contempt sanctions in order to bring his misconduct to an end.

**A.  Mr. Stone's Motion Is Untimely.**

On September 9, 2011, the Court determined that counsel for plaintiff, Evan Stone, had committed an egregious breach of his discovery obligations, and imposed sanctions.  Mr. Stone was ordered to do six things "to make all interested parties to this action whole" by October 24, 2011:

(1)    pay a $10,000 sanction to the Court;

(2)    serve the order on each ISP and every person with whom he communicated for any purpose in the proceeding;

(3)    file a copy of the order in every on-going court proceeding in the United States in which he represents a party;

(4)    disclose what funds, if any, he or his clients had received from any person associated with this case;

(5)     pay reasonable attorney fees related to bringing the motion for sanctions to ad litem

counsel, in an amount to be determined by the Court; and

(6)     to comply with these directives, and supply the Court with written confirmation of

his compliance, "not later than forty-five (45) days" after the order (*i.e.*, by October

24).

Order of September 9, 2011, at 16.

On October 14, 2011, Mr. Stone filed a timely objection to ad litem counsel's fee petition,

although he miscaptioned it as "Plaintiff's Response" (in fact, the sanctions order was directed at Mr.

Stone, not at his client). Mr. Stone has, however, failed to comply with the rest of the Court's order,

nor, so has he undertaken any other efforts to comply as far as counsel are aware, has he undertaken

any efforts to comply. By definition, he is now in contempt.

Mr. Stone has done two things in lieu of compliance. First, on October 17, 2011 he appealed

the sanction order. Second, on October 26, 2011, two days after the Court-imposed deadline had

passed, he filed an untimely "Motion to Stay the Imposition of Sanctions Pending Appeal" pursuant

to Rule 62(c). The filing of the appeal does not in itself affect his obligations under the sanctions

order as a party appealing an order must (in a timely way) successfully petition the issuing court for

a stay under Rule 62. The filing of the stay motion is insufficient because it is untimely, because the

court did not grant any relief from its order prior to October 26 deadline, and because Mr. Stone's

arguments have no merit.

**B.     Mr. Stone Has Not Properly Sought a Stay of the Monetary Provisions of the Court's Sanctions Order.**

Although Mr. Stone filed an untimely motion to stay the injunctive portion of the Court's

sanction order, he has not sought to stay the monetary portion, requiring a payment of a fine to the

Court and of reasonable attorney's fees (yet to be determined) to the ad litem counsel.  Rule 62(c)

provides no authority to stay the monetary component of the sanctions order.  Mr. Stone might have

sought such a stay pursuant to Rule 62(d), but such a motion requires the posting of a supersedeas

bond to preserve the status quo.  *See*, *e.g.*, *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992)

(citing *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988); *Poplar Grove Planting & Refining Co.*

*v. Bache Halsey Stuart*, 600 F.2d 1189, 1190 (5th Cir. 1979).  Mr. Stone did not file such a motion,

let alone post the appropriate bond in support of it.  Mr. Stone may still do so regarding ad litem

counsel's attorney's fees once the Court issues its final order regarding fees, but to counsel's

knowledge, he has posted no such bond regarding the Court's monetary sanction.  Having failed to

proper seek a stay for the monetary elements of the court's order, the duty to comply with that order

remains in full effect.  See *American Grain Association v. Lee-Vac, Ltd.*, 630 F.2d 245, 247 (5th Cir.

1980).  *See also Matter of Bleaufontaine, Inc.*, 634 F.2d 1383, 1390 n.14 (5th Cir. 1981).

      **C.**      **Mr. Stone's New Arguments and Evidence Lack Merit and Should Be Stricken.**

      Mr. Stone's new arguments against the sanctions order, raised for the first time here, lack

merit.  First of all, Mr. Stone has not shown that he will suffer severe and irreparable injury from

complying from the one part of the order to which he apparently objects—the duty to submit copies

of the order in other court proceedings.  He claims that compliance with the "filing" order will cause

Mr. Stone irreparable injury by costing him or his clients the right to a fair trial.  But the order

against him is already a matter of public record.  Moreover, the filing will only be presented to the

**judges** in the various cases Mr. Stone is handling around the country.  If the order is overturned, the

judges to whom he has sent the order will learn that fact too, and those judges will surely recognize

the significance of a reversal.  Moreover, those judges can certainly ensure that Mr. Stone's sanctions

are not disclosed to any juries unless the order is relevant to the issues being tried (and of course, if

the order is not affirmed on appeal).   And, having taken no steps to comply with the Court's order,

not even seeking a stay until after his deadline, Mr. Stone comes to the Court with unclean hands in

seeking the equitable relief of  a stay.

    With the equitable balance tipped so decidedly against him, Mr. Stone must show a strong

likelihood of success on appeal, but he has **no** likelihood of success on appeal.  Not a single one of

the grounds given by Mr. Stone for his appeal was presented to this Court while the motion for

sanctions was pending.  Indeed, Mr. Stone's only response to the sanctions motion, his "Plaintiff's

Response Regarding Case Activity" (DN 12), did not even mention the sanctions provisions of Rules

26 and 45 or his discovery obligations under those rules.  Hence, he has waived his proffered

appellate arguments, and he should not be permitted to bootstrap himself out of his waiver by

presenting them in support of a stay.  See *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir.1993)

(declining to address issues raised for the first time on appeal by pro se litigant).  Moreover, any new

evidence that Mr. Stone seeks to introduce, such as the e-mail exhibits attached to his response brief,

should be stricken from the record.

    Mr. Stone does make an argument that he captions a standing argument; if that were an

accurate label, Article III objections are jurisdictional and cannot be waived.  But Mr. Stone's

contention that the Electronic Frontier Foundation ("EFF") lacked standing to file a motion for

sanctions is not really a standing motion.  First of all, the motion for sanctions was not filed by EFF,

any more than it was filed by Public Citizen.  It was filed by the Doe defendants, who were

represented by attorneys who are employed by EFF and Public Citizen.  And the Does plainly had

standing to seek sanctions in this case.

Mr. Stone's real argument is that counsel ad litem's role in the case had terminated at the time the sanctions motion was filed because the discovery motion was "disposed of," and hence they could not file papers on behalf of the Does. Apart from the fact that this sort of procedural quibble is waivable, Mr. Stone is wrong—the ad litem appointment did not expire, because the discovery motion was never resolved. To be sure, Mr. Stone dismissed the case, but just as an attorney or party cannot evade sanctions for litigation misconduct, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 137-138 (1992), a misbehaving lawyer cannot deprive the Does of their ad litem representation by dismissing the case. The motion was filed because Mr. Stone refused to provide the information that counsel needed to ensure that their ad litem clients' interests had not been violated by the discovery misconduct. Indeed, Mr. Stone has still not provided that information even though the Court ordered him to do so. Moreover, the Court could have imposed all of the sanctions here sua sponte, including the one part of the order that Mr. Stone asks the Court to stay—the dissemination of the order to other judges. Hence this argument provides no basis for granting the stay.

Mr. Stone's other arguments are no more meritorious. Defendants' motion for sanctions, at 5, cited several cases in which sanctions, including sanctions under Rule 26(g), for issuance of improper subpoenas. Instead of engaging with that authority, Mr. Stone claims that the language of the Federal Rules is simply to narrow to authorize sanctions for his misconduct, because the only form of discovery covered by the Rule 26(g) signing obligation is a "discovery request," which supposedly does not include subpoenas. Then he claims that Rule 45(c) only obligated him to refrain from imposing burdens on the non-parties to whom he sent the subpoenas; he can burden the parties

as much as he likes, he contends.

This pettifoggery will not do.  Indeed, on the first page of the "Response Regarding Case Activity," DN 12, Mr. Stone said that his subpoenas to the ISP's "requested" the Does' identifying information, thus bringing them squarely within the language of Rule 26(g) that he seeks to evade. As for Rule 45, the subpoenas did impose burdens on the third party ISP's, and they certainly imposed burdens on the subjects of the subpoena.  As an experienced litigant in this area, Mr. Stone surely knew that the ISP's would send notices of the subpoenas to their clients (indeed, those ISP's who provide cable access to the Internet had a statutory obligation to provide notice), and that notice put a number of Does in fear of being (falsely) identified publicly as being involved with the trash that Mr. Stone's client purveys.  These burdens were completely unjustified because, as Mr,. Stone now grudgingly concedes, he had no authority to issue the subpoenas in the first place.

Mr. Stone also newly argues that because at least one ISP complied with his subpoenas for customer information pursuant to Court's retention order must mean that even though it did not grant his motion for early discovery, his own confusion too must have been justified.  Motion to Stay at 8.  This argument, of course, conflicts with his own argument in opposition to ad litem's fee request that his violations were plain and obvious and thus factored against the need to pay counsel their full rates: "Arguably, a first-year law student should be able to recognize such a violation of the Federal Rules."  DN 21, at 3.  More to the point, it was Mr. Stone's duty to ensure that his use of the subpoena power was appropriate and reasonable: "Informing the person served of his right to object is a good start... but it is no substitute for the exercise of independent judgment about the subpoena's reasonableness." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004). *See also id.* ("The subpoena power is a substantial delegation of authority to private parties, and those who invoke it

have a grave responsibility to ensure it is not abused.").

Finally, producing an otherwise privileged communication to his client (thus waiving the client's privilege in any other communications relating to the subpoenas) that he claims to have sent less than an hour after receiving the notice of entry of docket number 3, Mr. Stone claims to have relied on the text of the docket entry, referring to the Motion to Expedite Discovery as having been "granted," to justify his having sent out subpoenas. But the very same email acknowledges that the text of the order itself gave him no such authority and was at variance with the docket entry. The clerk's characterization of the order did not change the unambiguous text of the order, any more than the caption of a statute affects the unambiguous language of a statute. *Brotherhood of Railroad Trainmen v. Baltimore & Ohio R. R.*, 331 U.S. 519, 528-29 (1947). Mr. Stone knew very well that the Court had not granted him authority to take discovery yet—he expressed shock that he had "never seen a judge take this approach before"—but he cynically sent out subpoenas, telling his client that the ISP's "will probably comply as they always do." And when he learned that his misconduct had been was caught—when he received Mr. Levy's January 26 letter reflecting communications from the terrified Does to their court-appointed counsel—Mr. Stone showed his consciousness of guilt by quickly dismissing the case with prejudice to try to avoid the Court's scrutiny of his misconduct. Bad faith is amply supported by the record that was before the Court on the motion for sanctions, and by the current record as well even if the Court decides to allow the record to be supplemented by this bootstrapping motion.

**D.      Mr. Stone Should Be Held in Contempt for His Failure to Obey the Court's Sanctions Order.**

Mr. Stone's appeal does not divest the Court of jurisdiction to enforce its injunction or collect

the fine. *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 238 (5th Cir. 1997) ("A district court

has continuing jurisdiction in support of its judgment, and until the judgment has been properly

stayed or superseded, the district court may enforce it through contempt sanctions."(punctuation and

citations omitted)); *Plaquemines Parish Council v. United States*, 416 F.2d 952, 954 (5th Cir. 1969).

Mr. Stone did not comply with the Court's order by the Court's October 24 deadline; he has

still not complied with it; and he has made no effort to comply with it.  Instead, two days **after** he

went into contempt of court, Mr. Stone brazenly demanded that he be granted a stay of just one of

those obligations—the duty to file copies of the order with judges in other cases in which he is

counsel and to send the order to everybody with whom Mr. Stone communicated in this case.  Not

only has Mr. Stone not satisfied his other obligations under the sanctions order, but a motion for a

stay does not grant an automatic stay while the motion is being decided.  Nor can Mr. Stone's

various arguments about why the motion should be stayed—really arguments about why the

sanctions order should be overturned on appeal—be heard in opposition to contempt sanctions

because Mr. Stone was obligated to comply with the order even if he thought it wrong, and the

propriety of the order cannot be contested in response to a contempt motion.

The Court should find Mr. Stone to be in contempt, and the Court should allow Mr. Stone

to purge himself of that contempt by complying with the Court's sanctions order immediately.  The

Court is requested to consider imposing a daily fine of $1000 for each day after the Court's contempt

order is issued that Mr. Stone further delays compliance with the sanctions order.  The Court is

further requested to require Mr. Stone to pay the attorney fees of counsel for filing this brief, in the

amount of $3752.50, as supported by the accompanying affidavits of counsel.

## CONCLUSION

The motion for a stay should be denied, and Mr. Stone should be held in contempt.

Respectfully submitted,

    /s/ Paul Alan Levy
Paul Alan Levy
plevy@citizen.org
  Public Citizen Litigation Group
  1600 - 20th Street NW
  Washington, DC 20009
  (202) 588-1000
  plevy@citizen.org


    /s/ Matthew Zimmerman
Matthew Zimmerman
mattz@eff.org
Cindy Cohn
cindy@eff.org
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, California 94110
T: (415) 436-9333
F: (415) 436-9993
www.eff.org

Counsel ad litem for Does 1-670

October 29, 2011

## CERTIFICATE OF SERVICE

I certify that I am filing this brief through the Court's ECF systems, which will serve a copy

on opposing counsel automatically.


                                              /s/ Paul Alan Levy
                                              Paul Alan Levy