IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICK HAIG PRODUCTIONS, E.K., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1900-N |
| | § | |
| DOES 1-670, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Ad Litems' petition for attorneys' fees and expenses [18],

Plaintiff Counsel Evan Stone's motion to stay the imposition of sanctions pending appeal

[23], and Ad Litems' motions to strike and for contempt sanctions [24].  For the reasons that

follow, the Court grants Ad Litems' petition for attorneys' fees in a modified amount.

Because the Court finds that the facts here do not warrant a stay, it denies Stone's motion and

orders Stone to comply with the Court's September 9, 2011 Order [17] ("Sanctions Order").

Because Stone is in contempt of the Sanctions Order, the Court grants Ad Litems' motion

for contempt sanctions[1] and orders Stone to pay $500 per day to the Court registry for each

day he delays compliance with the Sanctions Order, beginning one week after the date of this

---

[1]The Court denies Ad Litems' request to strike Stone's motion to stay.  *See* Resp. to
Mot. Stay & Mot. Contempt Sanctions 3.  It also denies Ad Litems' requests for attorneys'
fees for their reply to their motion for attorneys' fees, *see* Reply Br. Supp. Att'y Fees 4 [22],
and their motion for contempt sanctions, *see* Resp. Mot. Stay & Mot. Contempt Sanctions
8 [24].

ORDER – PAGE 1

Order, unless or until Stone posts a supersedeas bond in accordance with this Order or the

Fifth Circuit grants him a stay.

## I. ORIGINS OF THE SANCTIONS DISPUTE

This dispute arises from a copyright infringement case in which Stone represented

Plaintiff Mick Haig Productions, E.K. in its suit against alleged online file-sharers of its

pornographic film *Der Gute Onkel*.  During the course of the suit, Plaintiff moved for leave

to take discovery prior to the customary Rule 26 conference in order to obtain the true

identities and contact information of Defendant Does 1-670.  In the same motion, Plaintiff

moved the Court to authorize the issuance of Rule 45 subpoenas to the Does' internet service

providers ("ISPs").  The Court declined to rule on the motion, instead appointing Ad Litems

to represent the Does' interests and ordering them to respond to Plaintiff's motion.  Before

the Court could issue an order on Plaintiff's motion, Plaintiff dismissed the case with

prejudice.

However, via a motion for sanctions, the Ad Litems soon made the Court aware that

Stone had been issuing subpoenas to the Does' ISPs even though the Court had not

authorized him to do so.  Accordingly, on September 9, 2011, the Court issued the Sanctions

Order sanctioning Stone for his unauthorized conduct under Rules 26 and 45.  Among the

sanctions, the Court ordered Stone to pay $10,000 into the Court registry, pay Ad Litems'

attorneys' fees for bringing the motion for sanctions, and file a copy of the Sanctions Order

in every federal or state proceeding ongoing at the time of the Order in which he represented

a party. The Court further ordered Stone to comply with the directives within the Order and supply the Court with written confirmation of his compliance no later than October 24, 2011.

In accordance with the Sanctions Order, the Ad Litems filed the instant motion for attorneys' fees. On October 26, 2011, Stone filed a motion to stay the imposition of sanctions pending appeal, arguing that requiring him to file a copy of the Sanctions Order in every currently pending proceeding in which he represents a party will result in irreparable harm. In response, the Ad Litems moved to strike Stone's motion to stay as untimely and to impose contempt sanctions for his failure to comply with the Sanctions Order.

## II. THE COURT GRANTS AD LITEMS' MOTION FOR ATTORNEYS' FEES IN A MODIFIED AMOUNT

### A. The Fifth Circuit's Attorneys' Fees Standard

In determining an appropriate fee award, courts first calculate a "lodestar" amount by multiplying a reasonable billing rate by the number of hours reasonably spent litigating a successful claim. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). This calculation, however, excludes hours spent on "excessive, redundant, or otherwise unnecessary work" and on nonprevailing claims unrelated to any successful claims. *Hensley*, 461 U.S. at 434-35. Courts then increase or decrease the lodestar amount based on the "*Johnson* factors": (1) the time and labor required to litigate the case, (2) the novelty and difficulty of the questions involved, (3) the skill required to litigate the case, (4) whether taking the case precluded the attorney from other employment, (5) the customary fee for similar work in the community, (6) the fee or percentage of recovery the attorney quoted to the client, (7) whether the client or case

ORDER – PAGE 3

required expedited legal work, (8) the amount involved and results obtained, (9) the

experience, reputation, and ability of the attorneys, (10) the "undesirabilty" of the case, (11)

the nature and length of the attorney-client relationship, and (12) awards made in similar

cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The

lodestar necessarily "subsumes" some *Johnson* factors. *Hensley*, 461 U.S. at 434 n.9; *Sims*

*v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1084 (5th Cir. 1985).

### B. The Court Modifies Ad Litems' Proposed Lodestar

Ad Litems request $22,040.00 – a sum based on 38.6 hours of work for two attorneys

specializing in digital rights and internet free speech. *See* Ad Litem Counsel's Pet. Att'ys

Fees & Expenses 3-4 [18] [hereinafter Mot. Att'ys Fees]; Aff. Matthew Zimmerman Supp.

Ad Litem Counsel's Pet. Att'ys Fees & Expenses 1-2 [18-1] [hereinafter Zimmerman Aff.];

Corrected Aff. Paul Alan Levy 2 [19] [hereinafter Levy Aff.]. Although the Court finds the

pay rate and hours worked reasonable in light of the evidence in the record,[2] it modifies the

proposed lodestar to comply with its previous Sanctions Order. The Sanctions Order only

---

[2]The Court rejects Stone's arguments that the rate and hours should be reduced. *See*
Pl.'s Resp. to Mot. Att'ys Fees 2-3, 6. The Court finds that Ad Litems have presented
substantial evidence that their rates are reasonable, especially given their expertise and
longevity of career. *See, e.g.*, Zimmerman Aff. 3 (listing numerous cases where courts have
found Electronic Frontier Foundation's, Zimmerman's organization, fees to be reasonable),
Levy Aff. Ex. 2, Ex. 3 (showing Levy's fee rate to be a reasonable rough average of two
Laffey Matrices), Reply Br. Supp. Att'ys Fees 2-4, 4 n.1 (explaining that Dallas market rates
are similar to San Francisco and D.C. market rates). The Court also finds that Ad Litems'
expenditure of time is reasonable. *See, e.g.*, Reply Br. Supp. Att'ys Fees 3 ("It was counsel's
longstanding ties with ISP counsel, developed in similar cases around the country, that
allowed them to develop the facts needed to support the motion for sanctions and related
briefing as quickly and efficiently as they did, and to prepare the motion for sanctions in the
short amount of time for which they have sought to be compensated.").

provided for attorneys' fees and expenses "reasonably incurred in bringing the motion for sanctions."   Sanctions Order 16.   Accordingly, the Court sets the initial lodestar at $19,385.00 so as to exclude the amount billed for preparing and drafting Ad Litems' motion for attorneys' fees.[3]  *See* Mot. Att'ys Fees 3-4.

### C. The **Johnson** *Factors Warrant an Upward Adjustment of the Lodestar*

The Court now turns to analyze whether the lodestar requires further adjustment in light of the *Johnson* factors.  Here, the lodestar calculation already includes the time and labor required to litigate the case, the novelty or difficulty of the question involved, the skill required to litigate the case, the customary fee for similar work in the community, the experience, reputation, and ability of the attorneys, and awards made in similar cases.  The Court finds inapplicable the factors concerning whether taking the case precluded the attorney from other employment, the fee or percentage of recovery the attorney quoted to the client, and the nature and length of the attorney-client relationship.  This leaves for examination whether the client or case required expedited legal work, the amount involved and results obtained, and the undesirability of the case.

The remaining factors weigh in favor of an upward adjustment of the revised lodestar. Ad Litems documented their quick action upon discovery of Stone's misconduct, which

---

[3]The Court rejects Stone's argument that the timeframe for fee accrual should be further limited to February 7, 2011 to February 11, 2011, the time it allegedly took Ad Litems to draft the motion for sanctions.  *See* Pl.'s Resp. to Mot. Att'ys Fees 1-2 [21].  The Court finds that under its Sanctions Order, fees regarding researching into Stone's misbehavior leading up to the sanctions order as well as fees for drafting and researching filings related to their reply are properly recoverable as fees and expenses "reasonably incurred in bringing the motion for sanctions."

included attempting to meet with Stone and when that was unavailing because Stone

voluntarily dismissed the suit in lieu of discussing his actions, filing the motion for sanctions

within fourteen days of Stone's voluntary dismissal. *See* Defs.' Mot. Att'ys Fees or

Sanctions 1 [10]. Such expedited action was proper and necessary given Stone's refusal to

meet, Stone's dismissal of the case in an attempt to evade review of his actions, *id.*, his

history of improperly issuing subpoenas in prior cases, Sanctions Order 11 n.8, and his

alleged "continue[d] . . . pursu[it of] copyright cases similar to this one and . . .

specializ[ation] in the representation of clients who produce similar material [to the Plaintiff

in this case]," Defs.' Mot. Att'ys Fees or Sanctions 1, 9 ("It is imperative that the extent of

his misconduct in this case be fully exposed, not only for the protection of the 670

Defendants targeted here, but also for future Defendants who may (unbeknownst to them)

find their rights similarly threatened.").

Additionally, the Court notes that Ad Litems were successful in their request that the

Court sanction Stone and that in doing so, they not only successfully protected the 670 Doe

Defendants in this action, but also potentially protected future Doe Defendants from Stone's

"substantial, unauthorized invasion of [their] privacy." Sanctions Order 13 n.12. The Court

is also cognizant that similar cases involving Doe defendants may be undesirable to members

of the legal community given that Doe defendants generally do not pay for legal services, *see*

Zimmerman Aff. 1, Levy Aff. 3, the cases present novel and complex issues involving the

intersection of new technology and privacy rights, *see* Zimmerman Aff. 1-2, and the cases

involve the Doe defendants' alleged consumption of pornographic material.

ORDER – PAGE 6

As such, the Court finds that the *Johnson* factors support an upward adjustment to a lodestar of $2,615.00, which is roughly 4.75 hours billed at $550 an hour, the lower of the two attorneys' fees.  Accordingly, the Court orders Stone to pay $22,000.00 to Ad Litems.[4]

### III. THE COURT DECLINES TO STAY THE IMPOSITION OF SANCTIONS

Stone requests that the Court stay the imposition of the injunctive portions of the sanctions Order.[5]  Particularly, his arguments concern the requirement that he file a copy of the Sanctions Order in every ongoing federal and state suit in which he represents a party. In determining whether the facts here warrant a stay, the Court considers the following factors: (1) whether Stone has made a strong showing that he is likely to succeed on the merits, (2) whether the injunctive sanctions will irreparably injure Stone absent a stay, (3) whether issuance of a stay will substantially injure the other parties, and (4) where the public interest lies.  *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  Additionally, the Court is reluctant to grant a stay of an injunction pending appeal where it would give Stone the

---

[4]The Court rejects Stone's argument that it is the party and not the party's attorney that is entitled to attorneys' fees.  *See* Pl.'s Resp. to Mot. Att'ys Fees 7.  The cases Stone cites all rely on statutory attorneys' fees provisions that specifically grant attorneys' fees to the prevailing parties.  Here, the attorneys' fees operate as sanctions, and pursuant to the Court's Sanctions Order, the fees are properly payable to Ad Litems.

[5]Although Stone entitled his motion "stay the imposition of sanctions," the Court's discussion in the text above centers only on the injunctive portion of the Sanctions Order because a Rule 62(c) motion is not the proper vehicle to request a stay of a monetary order, *compare* FED. R. CIV. P. 62(c) *with* FED. R. CIV. P. 62(d), and because in his motion Stone specifically focuses on the Court's requirement that he file the Sanctions Order in ongoing federal and state cases in which he represents a party.

ultimate relief he is seeking. *See* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY

KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2904, at 513 (2d ed. 1995).

Here, the Court finds that three of the four factors weigh against granting a stay. First,

Stone has not presented a substantial case on the merits of his appeal. In support of his

appellate case, Stone argues that Ad Litems improperly moved for sanctions since their role

terminated upon the dismissal of the case. *See* Mot. Stay Imposition Sanctions Pending

Appeal 4-5 [23] [hereinafter Mot. Stay]. This argument holds no water. The Court appointed

Ad Litems for purposes of the discovery motion. Ad Litems' motion for sanctions stemmed

from Stone's discovery abuse and so was properly within the scope of Ad Litems' duties.

Stone additionally argues that sanctions were not warranted under Rules 11, 26, and 45. *See*

*id.* at 5-10. The Court finds Stone's arguments unpersuasive and stands by its Sanctions

Order.[6] Finally, Stone argues that the sanctions were unwarranted or excessive because his

error did not rise to the level of bad faith. *See id.* at 11. The Court find this factor

inapplicable because it imposed sanctions under Rules 26 and 45, where bad faith is not a

factor. Thus, factor one weighs against granting a stay.

Second, Stone has failed to show that he will be irreparably injured absent a stay. The

Court finds no merit in Stone's position that filing the Sanctions Order in every currently

ongoing state and federal case in which he represents a party "will unnecessarily interfere

with his clients' interests in the fair, unprejudiced consideration of their claims." *Id.* at 12.

Judges considering Stone's clients' claims should not be influenced in their judgment by the

---

[6] The Court also notes that it did not impose sanctions pursuant to Rule 11.

ORDER – PAGE 8

Sanctions Order.  Further, juries will not become aware of the Sanctions Order unless it is both relevant to the issues being tried and more probative than prejudicial.  *See* FED. R. EVID. 402, 403.

The Court concedes that it may be the case, as Stone argues, that filing the Sanctions Order will result in damage to his professional goodwill.  *See id.*  But, it is Stone's actions, and not the resulting Sanctions Order, that do damage to his professional goodwill.  The Court additionally notes that the Sanctions Order is already a matter of public record, and as such is discoverable in any case in which he is a part.  Also, in the event that the Fifth Circuit overturns the Sanctions Order, judges and attorneys will undoubtedly recognize the significance of a reversal.

Finally, the Court is cognizant that imposing a stay of the requirement that Stone file the Sanctions Order in every ongoing case may give Stone the ultimate relief he is seeking. The Sanctions Order only requires Stone to file it in every "currently ongoing" case – meaning ongoing at the time the Court issued the Sanctions Order.  Delay during the pendency of the appeal may result in the termination of cases currently ongoing as of the date of the Sanctions Order, thereby mooting the force of the sanction.  This is especially true where Stone represents plaintiffs because, as he has demonstrated in this case, in the role of Plaintiff's counsel he, with the consent of his client, has the unique power to dismiss the suit at will.  Accordingly, factor two weighs against granting a stay.

Finally, the Court finds that the public interest too weighs against granting a stay.  By his conduct, Stone egregiously overstepped his boundaries and invaded the Doe Defendants'

privacy without authorization. *See* Sanctions Order 13 & n.12. The public has an interest in avoiding the appearance of impropriety in the legal profession, and staying the Sanctions Order does nothing to vindicate that interest. Furthermore, Stone has a history of improperly issuing subpoenas in other cases, *see* Sanctions Order 11 n.8, and his actions in this case demonstrate that to date he remains undeterred. The public has an interest in being free from unlawful invasions of privacy by a rogue attorney. Staying the Sanctions Order does nothing to vindicate that interest. Accordingly, factor four weighs against granting a stay.

Thus, the overwhelming weight of the Court's analysis disfavors a stay, with factors one, two, and four weighing against a stay.[7] Accordingly, the Court finds a stay inappropriate and therefore denies Stone's motion.

## IV. THE COURT FINDS EVAN STONE IN CONTEMPT

The Sanctions Order specifically ordered Stone to comply with its terms and supply the Court with written confirmation of his compliance no later than forty-five (45) days after the date of the Order. Sanctions Order 16. To date, Stone (1) has not filed a notice of compliance, (2) has admitted to not filing a copy of the Sanctions Order in every currently-ongoing proceeding in which he represents a party pending in any court in the United States, and (3) by failing to respond to Ad Litems' motion for contempt sanctions, has failed to demonstrate to the Court that he is not otherwise in violation of the Sanctions Order. Accordingly, the Court finds Stone in contempt and orders him to pay $500 per day to the

---

[7]Although factor three weighs in favor of granting a stay because a stay will not substantially harm parties to this case, the overwhelming weight of the Court's analysis is against granting a stay.

Court registry for each day he delays compliance with the Sanctions Order, beginning one week after the date of this Order, unless or until he posts a supersedeas bond[8] or the Fifth Circuit grants him a stay.[9]

### CONCLUSION

The Court grants Ad Litems' motion for attorneys' fees in a modified amount, denies Stone's motion to stay, and grants Ad Litems' motion for contempt sanctions. Accordingly, the Court orders Evan Stone to pay $22,000.00 in attorneys' fees to Ad Litems, file a copy of the Sanctions Order in every state and federal proceeding that was ongoing as of September 9, 2011 in which he represents a party, and otherwise comply with the Sanctions Order. Additionally, the Court finds Stone in contempt and orders him to pay $500 per day to the Court registry for each day he delays compliance with the Sanctions Order, beginning one week after the date of this Order, unless or until Stone posts a supersedeas bond in accordance with this Order or the Fifth Circuit grants him a stay of imposition of sanctions.

---

[8]If Stone wishes to post a supersedeas bond within six (6) days of the date of this Order, the bond amount will be $38,650. This amount is calculated pursuant to Local Rule 62.1: $32,000 as the initial money judgment amount ($10,000 sanction + $22,000 Ad Litems' fees) + 20% of that amount ($6,400) + $250 to cover costs = $38,650. *See* N.D. TEX. LOCAL CIV. R. 62.1. However, should Stone wish to post a supersedeas bond seven or more (7+) days from the date of this Order, the bond amount will increase by $600 per day over seven. This amount is similarly calculated pursuant to Local Rule 62.1 and reflects the $500 per day contempt sanction from this Order plus twenty percent. *See id.*

[9]The Court notes that under Fifth Circuit caselaw, it is free to issue contempt sanctions even while an appeal is pending. *See Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 238 (5th Cir. 1007) ("A district court has continuing jurisdiction in support of its judgment, and '[u]ntil the judgment has been properly stayed or superseded, the district court may enforce it through contempt sanctions.'" (internal citations omitted) (alteration in original)).

ORDER – PAGE 11

Signed January 24, 2012.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 12